USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1567 ROBERT B. REICH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, Plaintiff, Appellant, v. RICHARD ROWE, ETC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Torruella, Cyr, and Stahl, Circuit Judges. ______________ _____________________ Edward D. Sieger, Senior Appellate Attorney, with whom __________________ Thomas S. Williamson, Jr., Solicitor of Labor, Allen H. Feldman, _________________________ ________________ Associate Solicitor for Special Appellate and Supreme Court Litigation, and Joseph S. Ackerstein, U.S. Department of Labor, ____________________ Office of the Solicitor, were on brief for appellant. William H. Kettlewell, with whom Dwyer, Collora & Gertner, ______________________ _________________________ was on brief for appellees. ____________________ March 31, 1994 ____________________ TORRUELLA, Circuit Judge. We address in this case _____________ whether the civil enforcement provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1132(a) - (l), provide for equitable relief against a nonfiduciary who knowingly participates in a fiduciary breach. This issue comes to us in the shadow of a recent United States Supreme Court opinion, Mertens v. Hewitt Associates, 113 S. Ct. 2063 (1993), _______ _________________ which addressed the availability of remedies against nonfiduciaries under ERISA and concluded, albeit only in dicta, that no cause of action like the one brought in this case exists. Id. at 2067. After conducting our own analysis of the statute, __ we find that, although ERISA may allow for some types of actions against nonfiduciaries, it does not authorize suits against nonfiduciaries charged solely with participating in a fiduciary breach. I. BACKGROUND I. BACKGROUND The genesis of this appeal was a lawsuit brought by the United States Secretary of Labor (the "Secretary") on March 11, 1991, against several corporate and individual defendants involved in the failed OMNI Medical Health and Welfare Trust ("OMNI"). In the complaint, the Secretary alleged a number of ERISA violations in relation to OMNI's failure to pay approximately two to three million dollars in medical benefits to eligible employees of companies participating in the OMNI health plan. The Secretary also contended that appellee, H. James Gorman, Jr. ("Gorman"), a financial consultant who provided -2- professional services to OMNI, knowingly participated in the fiduciary breaches of several of OMNI's administrators. The district court dismissed the action against Gorman for failure to state a claim under ERISA and the Secretary brought this appeal. We accept all the factual allegations in the Secretary's complaint as true in order to review the district court's dismissal under Rule 12(b)(6). Garita Hotel Ltd. ___________________ Partnership v. Ponce Federal Bank, F.S.B., 958 F.2d 15, 17 (1st ___________ ___________________________ Cir. 1992). Between 1986 and 1990, OMNI provided group medical, dental, and life insurance and other benefits to a number of small, unrelated business employers in Massachusetts. The employers participating in OMNI established employee welfare benefit plans (the "welfare plans") within the meaning of ERISA 3(1), 29 U.S.C. 1003(1). By collecting premiums from the participating employers, OMNI held and controlled the assets of the welfare plans and was responsible for paying benefits to the employees. The Secretary claimed that OMNI falsely represented itself to be a "tax-exempt ERISA covered benefit plan" under ERISA 3(1), 29 U.S.C. 1002(1), in order to avoid governmental regulation and oversight. According to the Secretary, OMNI was a multiple employer welfare arrangement ("MEWA") within the meaning of ERISA 3(40)(a), 29 U.S.C. 1002(40)(a), but not an ERISA plan exempt from state insurance regulation. Count I of the complaint alleged that Harbor Medical -3- Administrators, Inc. ("HMA"), the administrator of OMNI, and HMA's President (Mr. Richard Rowe), Executive Vice-President (Mr. Phillip Carpenter) and Vice President (Ms. Ann Dunlop) acted as fiduciaries with respect to the employers' welfare plans. The Secretary asserted that these four defendants breached their fiduciary obligations under ERISA by engaging in a variety of imprudent and self-serving activities. The activities included engaging in prohibited transactions, mismanaging and misusing assets of the welfare plans, falsely representing the status of OMNI to employers and state regulators, and operating an illegal insurance company. Count II of the complaint alleged that Gorman, who was Director of Group Insurance and Welfare Plan Consulting Services, Actuarial, Benefits and Compensation Consulting, at the accounting firm of Coopers & Lybrand, provided "professional services" to OMNI from May through October of 1989. In particular, he provided advice to HMA regarding the legal status of OMNI under ERISA. On several occasions, Gorman informed Dunlop, Rowe and others at HMA that they were operating an illegal insurance company under Massachusetts law and that OMNI did not enjoy the protection of the ERISA provision exempting ERISA plans from state regulation. See 29 U.S.C. 1144. ___ Despite his own warnings, Gorman advised Dunlop, in response to a letter from the New Hampshire Insurance Department inquiring as to the legal status of OMNI, that she had the option to "try the 'red herring' across the trail of the Insurance Department just -4- to keep them off balance" by telling them OMNI was an ERISA covered plan. The gist of this advice was that OMNI could avoid state regulation by obfuscating its true legal status. Gorman provided Dunlop with a draft letter to send to the New Hampshire Insurance Department falsely stating that OMNI was covered by ERISA. Gorman further advised that there was little risk of investigation by the state once it was informed of a plan's ERISA status. Subsequently, Rowe adopted Gorman's draft letter and sent it to New Hampshire's Insurance Department on October 17, 1989. The complaint stated that Gorman acted at all times "within the scope of his employment" and by his actions participated in the fiduciary breaches of the defendants named in Count I. The Secretary did not allege that Gorman himself was a fiduciary. The Secretary concluded, however, that "Gorman is liable under ERISA to the same extent as the fiduciaries for the breaches committed." Gorman's employer, Coopers & Lybrand, was also named as a defendant based on the theory that it was liable for the actions of its agent. To remedy the alleged violations, the Secretary sought the recovery of plan losses, the undoing of prohibited transactions and a permanent injunction against all defendants, including Gorman, from serving as ERISA fiduciaries or service providers to any ERISA plans. On September 1, 1992, the district court granted motions to dismiss filed by Gorman and Coopers & Lybrand based on -5- the failure of Count II to state a claim under Rule 12(b)(6). The district court held that neither of the two ERISA enforcement provisions under which the Secretary could proceed, 29 U.S.C. 1132(a)(2) and 1132(a)(5), authorized a claim against nonfiduciaries like Gorman or Coopers & Lybrand.1 The district ____________________ 1 29 U.S.C. 1132(a), entitled "Persons empowered to bring a civil action," states in its entirety: A civil action may be brought -- (1) by a participant or beneficiary -- (A) for the relief provided for in subsection (c) of this subsection, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title; (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter or the terms of the plan; (4) by the Secretary or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title; (5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter; or (6) by the Secretary to collect any civil -6- court found that the Secretary could not obtain relief under 1132(a)(5) because that section applies only to nonfiduciary defendants who are "parties in interest."2 The district court also found that no cause of action existed under 1132(a)(2), which authorizes the Secretary to seek appropriate relief under 29 U.S.C. 1109,3 because only fiduciaries could be sued under ____________________ penalty under subsection (c)(2) or (i) or (l) of this section. 2 A "party in interest" includes a "person providing services to [an employee benefit] plan." 29 U.S.C. 1002(14)(B). ERISA prohibits certain transactions between ERISA plans and their parties in interest. 29 U.S.C. 1106(a)(1). The complaint contained no allegation that Gorman was a party in interest nor that he was engaged in any prohibited transactions. The facts stated in the complaint do suggest that Gorman satisfies the definition of a party in interest, but there is no indication he participated in any prohibited transactions. Although we do not decide whether the complaint must specifically allege that the nonfiduciary defendant is a "party in interest" in order to state a cause of action under 1132(a)(5), we do discuss the importance, under certain circumstances, of alleging that a defendant engaged in a prohibited transaction, see infra ___ _____ at pages 15, 18-19 & 23-24. 3 29 U.S.C. 1109(a) provides: Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title. -7- 1109 and neither Gorman nor Coopers & Lybrand were fiduciaries. On June 1, 1993, the Supreme Court held in a five to four decision that ERISA does not permit a civil suit for money damages against nonfiduciaries who knowingly participate in a fiduciary breach. Mertens, 113 S. Ct. at 2072. The Court in _______ Mertens found that "appropriate equitable relief," as authorized _______ under 1132(a) (3),4 includes only those types of relief typically available in equity, such as injunctions or restitution. Such relief would not include a classic form of legal relief like compensatory damages. Id. at 2068. The Court __ discussed, but expressly refrained from deciding, whether ERISA provides any remedy at all for nonfiduciary participation in a fiduciary breach. Id. at 2067-68. __ After the Mertens decision, the Secretary withdrew the _______ appeal of his claim against Coopers & Lybrand because that claim only sought monetary damages. The Secretary pursued the appeal of Gorman's dismissal to the extent the Secretary was seeking only equitable relief. The four fiduciary defendants in this case defaulted leaving Gorman as the only defendant who is party to this appeal. II. DISCUSSION II. DISCUSSION At the center of this case is the language of ____________________ 4 Section 1132(a)(3) provides for the same remedies as 1132(a) (5) in civil actions brought by an ERISA participant, beneficiary, or fiduciary (as opposed to actions brought by the Secretary under 1132(a)(5)), and contains nearly identical language. Because the shared language in both provisions "should be deemed to have the same meaning," Mertens, 113 S. Ct. at 2070, _______ most analyses of one provision apply equally to the other. -8- 502(a)(5) of ERISA which states that the Secretary may bring a civil action (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter. The Secretary maintains that its action against Gorman for alleged participation in the fiduciary breaches of OMNI's administrators constitutes a claim for "appropriate equitable relief to redress" violations of ERISA or "to enforce" provisions of ERISA under 1132(a)(B).5 According to the Secretary, the language of the provision does not explicitly require that the ERISA violation must be one committed by the person against whom the relief is sought, so long as the relief is "appropriate" for purposes of "redressing" a violation. See Mertens, 113 S. Ct. at _ ___ _______ 2073 n.1 (White, J., dissenting). Likewise, one could arguably bring an action against a nonfiduciary for the purposes of "enforcing" a provision of ERISA which imposes no obligation on that nonfiduciary but nevertheless requires some judicial relief against the nonfiduciary in order to remain effective. In this case, the Secretary argues that enjoining Gorman from providing any services to an ERISA plan would be an appropriate way of redressing the breaches committed by OMNI's administrators and of preventing subsequent breaches by some hypothetical group of fiduciaries who might take Gorman's advice ____________________ 5 The Secretary does not dispute that it has no remedy against Gorman under 1132(a)(2) because Gorman is not a fiduciary. -9- in the future. While plausible, we find that such a broad reading of this enforcement provision is contrary to a common sense construction of the ERISA statute and to the established restriction on our ability to create new causes of action. We interpret 1132(a)(5) to authorize actions only against those who commit violations of ERISA or who are engaged in an "act or practice" proscribed by the statute. Section 1132(a) (5)(A) authorizes injunctions against any "act or practice" which violates ERISA, while 1132(a)(5)(B) authorizes other equitable remedies for such acts or practices. Section 1132(a)(5)(B) simply adds remedies to the injunction authorized under 1132(a)(5)(A); it does not expand the substantive reach of ERISA to encompass new parties and transactions not otherwise covered by its substantive provisions. See Mertens, 113 S. Ct. ___ _______ at 2067 (noting in dicta that identical language in 1132(a)(3) "does not, after all, authorize 'appropriate equitable relief' at __ large, but only 'appropriate equitable relief' for the purpose of _____ 'redress[ing any] violations or . . . enforc[ing] any provisions' of ERISA"); Call v. Sumitomo Bank of California, 881 F.2d 626, ____ ____________________________ 635 (9th Cir. 1989); Nieto v. Ecker, 845 F.2d 868, 873-74 & n.7 _____ _____ (9th Cir. 1988); see also Kyle Rys., Inc. v. Pacific Admin. _________ _________________ ______________ Servs., Inc., 990 F.2d 513, 516-17 (9th Cir. 1993) (holding that _____________ relief for nonfiduciary liability is only available when nonfiduciary is engaged in a prohibited transaction under 29 U.S.C. 1106(a)(1)). Gorman's alleged participation in HMA's fiduciary -10- breach is not an "act or practice" which violates ERISA. See ___ Mertens, 113 S. Ct. at 2067; Call, 881 F.2d at 635. Moreover, _______ ____ the Secretary does not point to any substantive provision of ERISA that imposes a duty on nonfiduciaries to refrain from participating in a fiduciary breach.6 Consequently, 1132(a)(5) does not authorize the Secretary's action against Gorman in this case. The Secretary nevertheless asserts that we should apply the court's broad equitable powers and the court's federal common law-making authority under ERISA to read 1132(a)(5) expansively to authorize equitable relief for Gorman's alleged conduct. He invokes the established rule that the courts have power under ERISA to fashion common law based on the law of trusts to construe ambiguous statutory language and fill gaps in the statute. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, ___ ___________________________ _____ 110-15 (1989); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 ___________________ _______ (1987); Kwatcher v. Massachusetts Service Employees Pension Fund, ________ ____________________________________________ 879 F.2d 957, 966 (1st Cir. 1989). In several pre-Mertens cases, _______ ____________________ 6 The Secretary does argue that one of the enforcement provisions which imposes civil penalties for participation in a fiduciary breach, 29 U.S.C. 1132(l), indicates that Congress intended 1132(a)(5) to authorize remedies against nonfiduciaries like Gorman. We reject this argument below, see ___ infra pages 21-24. We note here, however, that 1132(l) is an _____ enforcement provision and not a substantive provision; not even the Secretary claims that the provision itself creates a substantive duty not otherwise provided for in the statute. Section 1132(l) was added to ERISA in 1989, see Omnibus Budget ___ Reconciliation Act of 1989, Pub. L. No. 101-239, 2101, 103 Stat. 2123. Instead of extending the substantive reach of ERISA, 1132(l) explicitly based its penalty on amounts already recoverable under existing provisions of the statute. 29 U.S.C. 1132(l)(2)(B). -11- the courts have exercised this power to afford a remedy against nonfiduciaries who participate in a fiduciary breach. See, e.g., ___ ____ Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 279-81 ______ _________________________________ (2d Cir. 1992); Whitfield v. Lindemann, 853 F.2d 1298, 1303 (5th _________ _________ Cir. 1988), cert. denied, 490 U.S. 1089 (1989); Brock v. ____ ______ _____ Hendershott, 840 F.2d 339, 342 (6th Cir. 1988). ___________ We refuse to adopt a common law remedy in this case because the Secretary's expansive application of 1132(a)(5) creates a new cause of action and a new source of liability where neither currently exists in the statute. As Justice Scalia explained in Mertens, _______ no provision explicitly requires [nonfiduciaries] to avoid participation (knowing or unknowing) in a fiduciary's breach of fiduciary duty. It is unlikely, moreover, that this was an oversight, since ERISA does explicitly ____ impose "knowing participation" liability on cofiduciaries. See 405(a), 29 U.S.C. 1105(a). That limitation appears all the more deliberate in light of the fact that "knowing participation" liability on the part of both cotrustees ____ and third persons was well established ___ under the common law of trusts . . . . In Russell we emphasized our _______ unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides "strong evidence that Congress did not intend to ___ authorize other remedies that it simply forgot to incorporate expressly." Mertens, 113 S. Ct. at 2067 (quoting Massachusetts Mut. Life Ins. _______ ____________________________ Co. v. Russell, 473 U.S. 134, 146-47 (1985)) (citations omitted) ___ _______ (emphasis in original). Although this discussion in Mertens is purely dicta, _______ -12- see id. at 2067-68 (reserving any decision on whether 1132(a) ___ __ authorizes an action against a nonfiduciary for participating in a fiduciary breach), its reasoning, based on the Russell _______ decision, accords with this Circuit's jurisprudence established in Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821 (1st __________ ___________________________ Cir.), cert. denied, 488 U.S. 909 (1988). In Drinkwater, we ____ ______ __________ applied Russell to hold that extra-contractual damages are not a _______ form of "other appropriate relief" under 1132(a)(5) because such relief was not expressly granted and we could not conclude "Congress intended to authorize any form of relief other than what was expressly granted." Id. at 824; see also Russell 473 __ ________ _______ U.S. at 145-48 (refusing to imply a private cause of action for individual beneficiaries to obtain damages caused by a fiduciary breach because Congress had created such liability only in favor of the ERISA plans themselves). In this case, Congress did not expressly provide for a remedy against nonfiduciaries who participate in a fiduciary breach. Therefore, and in light of the potentially broad area of liability such a remedy would create, we conclude that Congress did not intend for its grant of equitable relief in 1132 (a)(5) to authorize the present action against Gorman. See Framingham Union Hosp., Inc. v. Travelers ___ _____________________________ _________ Ins. Co, 744 F. Supp. 29, 33 (D. Mass. 1990) (finding that under _______ ERISA, "the courts' authority to adopt trust-law principles is limited to fashioning 'appropriate relief' under specified causes of action, among specified parties") (citing Nieto, 845 F.2d at _____ 872). -13- The Secretary claims that the Russell and Drinkwater _______ __________ decisions do not apply to this case because they involved situations where the statutory language clearly excluded the requested remedy. See Russell, 473 U.S. at 141-43 (language ___ _______ granting damage remedies "to the plan" excluded damages to other parties like beneficiaries); Drinkwater, 846 F.2d at 824-25 __________ (finding express grant of "equitable relief" excluded other types of relief such as compensatory and punitive damages). The court's common lawmaking authority was not exercised in those cases because that authority does not include the power "to revise the text of the statute." Mertens, 113 S. Ct. at 2070. _______ The Secretary maintains that in this case, however, where the statute is silent or ambiguous, courts should look to ERISA's broader purposes of protecting the interests of participants and beneficiaries, see Firestone, 489 U.S. at 113, ___ _________ and provide a remedy where necessary to further those purposes; the court should not just assume that the absence of express authority is a deliberate omission and thus a bar to remedial measures. According to the Secretary, our decisions in Kwatcher, ________ 879 F.2d at 965-66, and Malden Mills Indus., Inc. v. Alman, 971 __________________________ _____ F.2d 768, 774-75 (1st Cir. 1992), are examples of this principle because in those cases we applied common law remedies to situations in which the ERISA statute did not specify a cause of action. Kwatcher, 879 F.2d at 965-66 (applying federal common ________ law to allow restitution action for recovery of overpayments to an ERISA pension fund); Malden Mills, 971 F.2d at 774-75 _____________ -14- (recognizing a common law right to "restitution for overpayment of contributions by an employer to a Fund"). All things considered, judicial remedies for nonfiduciary participation in a fiduciary breach fall within the line of cases where Congress deliberately omitted a potential cause of action rather than the cases where Congress has invited the courts to engage in interstitial lawmaking. To begin with, Congress proscribed several "acts or practices" in ERISA's substantive provisions that involve nonfiduciaries but did not include among them a nonfiduciary's knowing participation in a fiduciary breach. See Mertens, 113 S. Ct. at 2067 & n.4. For ___ _______ example, 29 U.S.C. 1106(a)(1) prohibits certain transactions between "parties in interest," see supra, note 2, and ERISA ___ _____ plans,7 and 29 U.S.C. 1023(d)(8) prohibits actuaries from breaching their duty to certify that their actuarial statements are "complete and accurate." In addition, 29 U.S.C. 1105 imposes liability on cofiduciaries for knowingly participating in _____________ a fiduciary breach. It is such "acts or practices" as these for which 1132(a)(5) provides a remedy. If Congress desired to augment the existing remedies against fiduciary breaches, 29 U.S.C. 1109(a), by providing for ____________________ 7 The fact that 1106 imposes the duty to refrain from prohibited transactions on fiduciaries and not on the parties in interest is irrelevant for our purposes because 1132(a)(5) reaches "acts or practices" that violate ERISA and prohibited transactions violate 1106. Although fiduciary breaches also violate ERISA, nonfiduciaries cannot, by definition, engage in the act or practice of breaching a fiduciary duty. Nonfiduciaries, can, however, engage in the act or practice of transacting with an ERISA plan. -15- an action against nonfiduciaries for assisting those breaches, it could have done so with provisions similar to those concerning cofiduciaries and prohibited transactions. See Russell, 473 U.S. ___ _______ at 147 ("'The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.'") (quoting Northwest Airlines, ___________________ Inc. v. Transport Workers, 451 U.S. 77, 97 (1981)); see also ____ __________________ ________ Useden v. Acker, 947 F.2d 1563, 1581 (11th Cir. 1991), cert. ______ _____ ____ denied, 113 S. Ct. 2927 (1993) ("[A] court should only ______ incorporate a given trust law principle if the statute's text negates an inference that the principle was omitted deliberately from the statute."). In contrast, the Kwatcher and Malden Mills ________ ____________ cases presented a situation not of deliberate omission, but one where the remedy was "fully consonant with ERISA's underlying policies as expressed in 29 U.S.C. 1103(c)(2)(A)." Kwatcher, ________ 879 F.2d at 967 (finding common law restitution action consistent with statutory provision allowing for the return of mistaken contributions); see also Malden Mills, 971 F.2d at 775 (noting ________ ____________ that the same statutory provision supports a right of restitution). More importantly, we do not find it appropriate to authorize a common law cause of action in this case because nonfiduciary participation in a fiduciary breach is most likely to involve, as it does here, service providers and other nonfiduciary professionals who provide advice or expertise to -16- ERISA fiduciaries. The advice and expertise provided by these individuals -- whether actuaries, lawyers, accountants, or consultants -- is vital for the successful operation of ERISA plans which must function in a highly complex and regulated environment. At the same time, such advice is particularly vulnerable to remedies that impose liability like the one requested by the Secretary. We do not mean to countenance the action of someone who advises a fiduciary to break the law, but we are concerned that extending the threat of liability over the heads of those who only lend professional services to a plan without exercising any control over, or transacting with, plan assets will deter such individuals from helping fiduciaries navigate the intricate financial and legal thicket of ERISA. Congress recognized this danger and was purposefully circumspect about limiting the liability of those providing professional services to ERISA plans. See, e.g., 29 U.S.C. ___ ____ 1108 (b)(2) (exempting from the list of transactions prohibited under ERISA, contracts or arrangements with a party in interest for "legal, accounting, or other services necessary for the establishment or operation of the plan"). The text of ERISA allocates liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds. . . . Professional service providers such as actuaries become liable for damages when they cross the line from advisor to fiduciary, [and they] must disgorge assets and profits obtained through participation as parties-in-interest in transactions prohibited by [ 1106(a)] and pay related civil penalties, see 502(i), 29 U.S.C. -17- 1132(i) . . . . Mertens, 113 S. Ct. at 2071-72. _______ While we recognize that our decision to limit liability for nonfiduciaries may provide less protection than existed before ERISA was enacted and that the decision may appear contrary to ERISA's purpose of protecting the interests of participants and beneficiaries, we also recognize that the present structure of ERISA was the outcome of certain cost- benefit analyses that Congress undertook in order to fashion a comprehensive regulatory scheme. Exposure not only to liability for damages but to other forms of liability as well "would impose high insurance costs upon persons who regularly deal with and offer advice to ERISA plans, and hence upon ERISA plans themselves." Id. at 2072. We will normally not attempt to __ adjust the balance between the competing goals of protecting employees' interests and containing pension costs that Congress has struck in the ERISA statute. Id. (citing Alessi v. __ ______ Raybestos-Manhattan, Inc., 451 U.S. 504, 515 (1981) and Russell, _________________________ _______ 473 U.S. at 148 n.17)); see also Pilot Life Ins. Co. v. Dedeaux, ________ ____________________ _______ 481 U.S. 41, 54 (1987). Congress decided that the best approach was to limit liability for nonfiduciaries, especially service providers, while at the same time increasing the number of fiduciary parties and the scope of fiduciary responsibility. See ___ Mertens, 113 S. Ct. at 2071. We decline to upset this decision _______ by invoking our common law authority in this case. We are more willing to create common law remedies that -18- are directed toward undoing specific transactions or recovering assets of an ERISA plan. In those situations, the parties are more likely to be in control of plan assets and thus functionally more like fiduciaries. As we demonstrated in Kwatcher and Malden ________ ______ Mills, the provision of restitution remedies to seek the return _____ of plan assets can be a proper exercise of our common lawmaking authority. Kwatcher, 879 F.2d at 965-67; Malden Mills, 971 F.2d ________ ____________ at 774; accord Provident Life & Accident Ins. Co. v. Waller, 906 ______ ___________________________________ ______ F.2d 985, 992-94 (4th Cir.), cert. denied, 498 U.S. 982 (1990); ____ ______ Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 ____ ___________________________________________________ F.2d 1176, 1185-87 (3d Cir. 1991). In this case, however, no restitution remedy exists. The Secretary never alleged that Gorman received or controlled ERISA plan assets, and we would not consider the salary Gorman presumably earned8 as ill-gotten profits. Instead, we would consider Gorman's salary as a part of the ERISA plan's cost of operations. Furthermore, the facts of this case do not present a situation where the court must use its equitable powers, as the Secretary warns, "to stop an ongoing bribery or kickback scheme, or [provide] restitution and a constructive trust to recover funds transferred from a plan to a nonfiduciary." In those situations, unlike the present case, the act or practice being remedied is either expressly proscribed by the statute (by ____________________ 8 The Secretary makes no allegation that Gorman received unreasonable compensation for his services. If such had been the case, the Secretary might have stated a cause of action based on Gorman's engagement in a prohibited transaction, 29 U.S.C. 1106, but not for participation in a fiduciary breach. -19- 1106, for example, which prohibits certain transactions between the plan and a "party in interest"), and thus explicitly covered under 1132(a)(5), or else within our recognized powers of granting restitution. On a somewhat different tack, the Secretary attempts to characterize the suit against Gorman as merely a request for the court to exercise its equitable powers to remedy an existing violation of ERISA and not a request for creating an independent cause of action or imposing new liability. This assertion ignores the allegations made in the complaint and the essential nature of the charge against Gorman. The complaint states: Gorman at all times herein acted within the scope of his employment and by his actions participated in and furthered what he knew or should have known were the fiduciary breaches of [the fiduciary defendants]. Accordingly, Gorman is liable under ERISA to the same extent as the fiduciaries for the breaches committed after September 13, 1989. The Secretary makes no claim that enjoining Gorman from working for any ERISA plans in the future is necessary to redress the breaches committed by OMNI's administrators or is necessary to enforce the ERISA provisions imposing fiduciary duties. Instead, the Secretary is asking that Gorman be held liable "as the fiduciaries," a result plainly at odds with Russell and _______ Drinkwater as discussed above. If the Secretary really intended __________ merely to remedy the acts committed by other individuals, the complaint would not have focussed on Gorman's alleged misdeeds but rather on how Gorman is in a position to remedy the -20- fiduciary's misdeeds. In fact, under the Secretary's theory Gorman's misdeeds would be irrelevant -- "innocent" and well- meaning parties would be reachable as long as they were in some position to help redress the fiduciaries' breaches. Moreover, even if the Secretary were to rephrase the complaint as a request for an injunction against Gorman specifically for the purpose of redressing past, and preventing future, fiduciary breaches, the Secretary would still fail to state a cause of action. The Secretary's claim would still, in substance, constitute a request for the imposition of liability for an act that is not proscribed by the statute. The suit against Gorman constitutes an appeal to the court to impose liability for committing a specific act -- giving improper advice to fiduciaries. It is not an appeal to the court to remedy the subsequent breaches committed by the fiduciaries themselves. The appropriate equitable relief for redressing those breaches is not the action against Gorman but the remedy already requested from the fiduciaries in Count I, which sought, among other things, the restoration of plan losses and the reversing of prohibited transactions. We see nothing that makes Gorman a particularly suitable target for this type of relief as he was not party to any prohibited transactions nor the recipient of plan assets. For similar reasons, the assertion that equitable relief against Gorman is necessary to prevent some hypothetical fiduciary breaches committed by those whom Gorman may advise in the future is unpersuasive. ERISA extensively -21- regulates and polices fiduciaries, see 29 U.S.C 1101 - 1114, ___ and it provides ample remedies to prevent future fiduciary breaches, see 29 U.S.C. 1132(a)(2), 1109. Should Gorman ___ advise future fiduciaries to break the law, we should think ERISA's existing provisions are sufficient to deter those fiduciaries from following his advice. It is in light of the foregoing that we can best understand the apparent fly in our analytic ointment, 29 U.S.C. 1132(l).9 The Secretary argues that this civil enforcement ____________________ 9 29 U.S.C. 1132(l) provides in relevant part: (1) In the case of -- (A) any breach of fiduciary responsibility under (or other violation of) part 4 by a fiduciary, or (B) any knowing participation in such a breach or violation by any other person, the Secretary shall assess a civil penalty against such fiduciary or other person in an amount equal to 20 percent of the applicable recovery amount. (2) For purposes of paragraph (1), the term "applicable recovery amount" means any amount which is recovered from a fiduciary or other person with respect to a breach or violation described in paragraph (1) -- (A) pursuant to any settlement agreement with the Secretary, or (B) ordered by a court to be paid by such fiduciary or other person to a plan or its participants and beneficiaries in a judicial proceeding instituted by the Secretary under subsection (a)(2) or (a)(5) of this section. Under paragraph (3) of 1132(l), the Secretary may waive or reduce this penalty if he believes that "the fiduciary or other -22- provision, which authorizes civil penalties for participation in a fiduciary breach by "other persons" based on amounts recovered by the Secretary under 1132(a)(2) and 1132 (a)(5), indicates that Congress intended for 1132(a)(5) to provide a remedy for nonfiduciary violations of a fiduciary breach. Otherwise, the Secretary claims, no civil penalties against "other persons" under 1132(l)(1)(B) would be possible and the provision would be rendered meaningless. Justice Scalia rejected this argument in Mertens, 113 _______ S. Ct. at 2070-71, by noting that the "equitable relief" awardable under [ 1132(a)(5)] includes restitution of ill-gotten plan assets or profits, providing an "applicable recovery amount" to use to calculate the penalty, . . . and even assuming nonfiduciaries are not liable at all for knowing participation in a fiduciary's breach of duty, see supra, at 2067-2068, cofiduciaries _____ expressly are, see [29 U.S.C. 1105], so there are some "other person[s]" than fiduciaries-in-breach liable under [ 1132(l)(1)(B)]. Id. at 2071. __ We find it significant that the Secretary invokes the civil penalty provision in a case where, because he is seeking an injunction, 1132(l)'s civil penalty based on amounts recovered under 1132(a)(5) is not applicable. Cofiduciary breaches ____________________ person will [otherwise] not be able to restore all losses to the plan without severe financial hardship." 29 U.S.C. 1132 (l)(3)(B). -23- aside,10 it is difficult to imagine any case where knowing participation in a fiduciary breach by a nonfiduciary would occasion the type of remedy (restitution awards) that would trigger 1132(l)(1)(B) without the nonfiduciary having engaged in a prohibited transaction under 29 U.S.C 110611 or otherwise having obtained some ill-gotten plan assets in a manner not covered by the prohibited transaction section. We conclude, therefore, that 1132(l) makes little sense as independently authorizing equitable relief against nonfiduciaries like Gorman, who allegedly participated in a fiduciary breach but did not engage in an act prohibited by the statute or otherwise obtain plan assets, when it can never be used for such relief. If 1132(l) fails to demonstrate Congressional intent to provide money damages for nonfiduciary participation in a fiduciary breach, see id. at 2070-71, it is even less likely to demonstrate ___ __ Congressional intent to provide nonmonetary equitable remedies ___________ ____________________ 10 The Secretary takes issue with Justice Scalia's proposal that "any other person" in 1132(l)(1)(B) could refer to cofiduciaries. According to the Secretary, cofiduciary liability, established under 29 U.S.C. 1105, clearly falls under 1132(l)(1)(A) and not 1132(l)(1)(B). We need not resolve this dispute and therefore do not. 11 We recognize that prohibited transactions are also covered by a separate civil penalty provision, 29 U.S.C. 1132(i), but that does not necessarily mean civil penalties for prohibited transactions cannot be obtained under 1132(l) as well. The penalty under 1132(i) is completely discretionary and adjusted according to whether the prohibited transaction was corrected or not. The penalty under 1132(l), however, is mandatory and contains special procedures for a general waiver. Thus, the two provisions appear to serve distinct and coextensive purposes: one is tailored specifically to redress individual transactions while the other is designed to penalize conduct more generally. -24- for nonfiduciary participation in a fiduciary breach. III. CONCLUSION III. CONCLUSION The Secretary's interpretation of 1132(a)(5) as authorizing an actionable claim in any situation where an ERISA violation has occurred and the Secretary thinks relief is "appropriate," regardless of whether or not that relief is directed at an act or practice addressed by the substantive provisions of the statute, stretches the language of 502(a)(5) past its breaking point. For this reason and because we decline to exercise our common lawmaking authority or our inherent equitable powers in situations where a professional service provider assists in a fiduciary breach but receives no ill-gotten plan assets, the judgment of the district court is affirmed. ________ -25-