73 F.3d 1027
 77 A.F.T.R.2d 96-579, 64 USLW 2440,
19 Employee Benefits Cas. 2473,
Pens. Plan Guide P 23917I
 Robert B. REICH, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellant,
v.
Franz G. STANGL, Defendant-Appellee,
Davidson Lumber Sales, Inc., Employees Retirement Plan, and
David R. Davidson, Jr., Defendants.
 No. 94-4096.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 10, 1996.
 
 Michael Alan Schloss, United States Department of Labor, Washington, DC, Thomas S. Williamson and Karen L. Handort, United States Department of Labor, Office of Solicitor, Washington, DC, and Marc I. Machiz, Associate Solicitor, Plan Benefits Security Division, Washington, DC (with them on the briefs), appearing for plaintiff-appellant.
 Dean C. Andreasen (Robert E. Mansfield, with him on the briefs), Campbell, Maack & Sessions, Salt Lake City, Utah, appearing for defendant-appellee.
 Before BRORBY, KELLY, and HENRY, Circuit Judges.
 HENRY, Circuit Judge.
 
 
 1
 Plaintiff-appellant, the Secretary of Labor (the Secretary), appeals the district court's summary judgment order dismissing his claims against the defendant-appellee Franz C. Stangl. The Secretary brought this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001-1461, alleging that Mr. Stangl was a party in interest who had engaged in prohibited transactions. The Secretary sought restitution of plan assets and other equitable relief. Relying upon legislative history, the district court held that Congress did not intend to create such a cause of action. We exercise jurisdiction pursuant to 28 U.S.C. Sec. 1291 and reverse the decision of the district court.
 
 I. BACKGROUND
 
 2
 Mr. Stangl was general partner of the Bowling Property Limited Partnership, an entity formed with other investors to develop real property in Sandy, Utah. Mr. Stangl and David R. Davidson were partners in the S & D Limited Partnership ("S & D"). Mr. Davidson held a fifty percent limited partnership interest in S & D, while Mr. Stangl held a forty-eight percent limited partnership interest and a two percent general partnership interest in S & D. In addition to his business association with Mr. Stangl, Mr. Davidson was trustee of the Davidson Lumber Sales Inc. Employees Retirement Plan (the Plan), an employee welfare benefit plan under section 2(1) of ERISA, 29 U.S.C. Sec. 1002(1).
 
 
 3
 In 1979, the Plan made a $200,000 loan to the Bowling Property Limited Partnership. In exchange for the loan, Mr. Stangl executed a note on behalf of the Bowling Property Limited Partnership secured by a trust deed on the Sandy, Utah property in favor of the Plan. Although the note was renewed several times between 1979 and 1985, the Bowling Property Partnership made no payments to the Plan.
 
 
 4
 In 1985, Mr. Davidson and Mr. Stangl entered into a series of agreements purporting to reconcile their business relationship. Under the terms of one agreement, Mr. Davidson personally assumed the Bowling Property Limited Partnership's obligations on the loan from the Plan. Mr. Davidson also caused the Plan to reconvey the trust deed securing that loan back to the Bowling Property Limited Partnership. One consequence of this "reconciliation" was therefore that the Plan fiduciary personally assumed a note to the Plan and then released the mortgage securing that note.
 
 
 5
 In 1990, the Secretary filed a civil action against Mr. Davidson and Mr. Stangl.[1] The Secretary alleged that Mr. Davidson had violated his fiduciary duty to the Plan, and that Mr. Stangl was a party in interest under section 2(14) of ERISA, 29 U.S.C. Sec. 1002(14), who participated in a prohibited transaction under section 406, 29 U.S.C. Sec. 1106. Although it is not a part of the record in this case, it appears that the allegations against Mr. Davidson have been resolved. As to Mr. Stangl, the Secretary sought an order of restitution requiring him to return to the Plan the unjust enrichment that he received from the allegedly prohibited transactions, the imposition of a constructive trust on his interest in the Sandy property, and an order permanently enjoining him from serving as a fiduciary in any ERISA pension plan.
 
 
 6
 The parties filed motions for summary judgment, and the district court ruled in favor of Mr. Stangl.[2] Relying primarily on legislative history, the court held that the Secretary cannot bring an action in equity against a nonfiduciary party in interest for engaging in a prohibited transaction under section 406(a) of ERISA, 29 U.S.C. Sec. 1106(a).
 
 
 7
 On appeal, the Secretary challenges this conclusion. We engage in de novo review of the district court's grant of summary judgment. Boone v. Carlsbad Bancorporation, Inc., 972 F.2d 1545, 1550 (10th Cir.1992).
 
 II. DISCUSSION
 
 8
 ERISA is a comprehensive statute designed to protect employee benefit plans. See ERISA, Sec. 1, 29 U.S.C. Sec. 1001 (noting that employee benefit plans have treated beneficiaries unfairly and that Congress intends to establish standards to provide equitable retirement plans). In furtherance of that policy, ERISA designates as fiduciaries not only those persons expressly named by a plan, see ERISA, Sec. 402(a), 29 U.S.C. Sec. 1102(a), but also those persons who exercise control over the management and administration of the plan and the distribution of its assets, see ERISA, Sec. 2(21)(A), 29 U.S.C. Sec. 1002(21)(A). Individuals who provide "investment advice for a fee or other compensation" are also regarded as fiduciaries. Id.
 
 
 9
 ERISA imposes a number of obligations on fiduciaries, including " 'the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest.' " Mertens, 508 U.S. at ----, 113 S.Ct. at 2066 (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142-43, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1985)). The statute provides specific remedies for the violation of these obligations. Under section 409, a fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." ERISA, Sec. 409(a), 29 U.S.C. Sec. 1109(a).
 
 
 10
 ERISA also designates certain individuals as "parties in interest." See ERISA, Sec. 2(14), 29 U.S.C. Sec. 1002(14). The term "party in interest" is defined broadly and includes fiduciaries, plan employees, employers whose employees are covered by ERISA plans, service providers, employee organizations whose members are covered by a plan, and owners of fifty percent or more of stock in these employer and employee organizations. See id. Parties in interest also include employees, officers, and directors, as well as shareholders, partners, and joint venturers owning ten percent or more of entities that are themselves parties in interest. See ERISA, Sec. 2(14)(H)-(I), 29 U.S.C. Sec. 1002(14)(H)-(I). Section 406 of ERISA, 29 U.S.C. Sec. 1106, prohibits fiduciaries from engaging in certain transactions with these parties in interest.
 
 
 11
 ERISA provides a variety of means to enforce these provisions. Under section 502 of ERISA, 29 U.S.C. Sec. 1132, plan participants, beneficiaries, fiduciaries, and the Secretary of Labor may bring civil actions to redress various violations of the statute. In this case, the Secretary asserted claims against Mr. Stangl pursuant to section 502(a)(5), which authorizes civil actions seeking "appropriate equitable relief" to redress violations of ERISA. ERISA, Sec. 502(a)(5), 29 U.S.C. Sec. 1132(a)(5).
 
 
 12
 In challenging the district court's dismissal of this action, the Secretary maintains that the plain language of the statute, its legislative history, ERISA's enforcement scheme, and persuasive case law allow the Secretary to bring an equitable action to recover the Plan's assets from a nonfiduciary party in interest. Mr. Stangl responds that the Supreme Court's decision in Mertens limits the causes of action the Secretary may bring to those that ERISA specifically lists and that ERISA does not provide an equitable action against a nonfiduciary party in interest for engaging in a prohibited transaction. In analyzing the issues presented, we begin with the statutory language. Then we discuss the impact of Mertens, ERISA's legislative history, and a related provision of the Internal Revenue Code.
 
 A. Statutory Language
 
 13
 As noted above, section 502(a) provides that the Secretary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter." ERISA, Sec. 502(a)(5), 29 U.S.C. Sec. 1132(a)(5). Section 406(a), "a provision of this subchapter" to which section 502 applies, states that a fiduciary may not engage in certain transactions with a party in interest:
 
 
 14
 Except as provided in section 1108 of this title:
 
 
 15
 (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
 
 
 16
 (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
 
 
 17
 (B) lending of money or other extension of credit between the plan and a party in interest;
 
 
 18
 (C) furnishing of goods, services, or facilities between the plan and a party in interest;
 
 
 19
 (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or
 
 
 20
 (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.
 
 
 21
 ERISA, Sec. 406(a), 29 U.S.C. Sec. 1106(a). Read together, sections 406 and 502 indicate that the Secretary's action against Mr. Stangl is an action under section 502 "for appropriate equitable relief" to redress a violation of section 406 and to enforce that section's prohibition of transactions with parties in interest.
 
 
 22
 Several other circuits have agreed with this interpretation, concluding that these sections authorize equitable actions against parties in interest who have engaged in prohibited transactions. In Nieto v. Ecker, 845 F.2d 868, 873-874 (9th Cir.1988), the court addressed section 502(a)(3), which authorizes equitable actions by a participant, beneficiary, or fiduciary in language similar to the language used in section 502(a)(5) for actions brought by the Secretary.[3] In concluding that section 502(a)(3) authorizes equitable actions against parties in interest, the Ninth Circuit noted that section 502(a)(3)'s language expressly grants equitable power to redress violations of ERISA and that transactions prohibited under section 406 constitute violations for which equitable relief may be obtained. The Ninth Circuit reasoned that "[c]ourts may find it difficult or impossible to undo such illegal transactions unless they have jurisdiction over all parties who allegedly participated in them." Nieto, 845 F.2d at 874. The Ninth Circuit has recently reaffirmed this holding. See Landwehr v. Dupree, 72 F.3d 726, 734-35 (9th Cir.1995); Concha v. London, 62 F.3d 1493, 1503-04 (9th Cir.1995). The Third Circuit has reached the same conclusion. See Reich v. Compton, 57 F.3d 270, 285-87 (3d Cir.1995).
 
 
 23
 The First Circuit's decision in Reich v. Rowe, 20 F.3d 25 (1st Cir.1994), adopts the same interpretation of these ERISA provisions. In Rowe, the court held that ERISA did not authorize the Secretary to bring an equitable action against a nonfiduciary for participating in a breach of a fiduciary's duties. However, in reaching that conclusion, the court contrasted actions against nonfiduciaries alleging participation in a fiduciary's breach with actions against nonfiduciary parties in interest alleging participation in prohibited transactions. As to the latter, the court reasoned that transactions prohibited under section 406 constituted " 'acts or practices' ... for which [section 502(a)(5) ] provides a remedy." Id. at 31. Importantly, the Rowe court found it insignificant that Sec. 406 imposes the obligation on fiduciaries rather than parties in interest:
 
 
 24
 The fact that [section 406] imposes the duty to refrain from prohibited transactions on fiduciaries and not on the parties in interest is irrelevant for our purposes because [section 502(a)(5) ] reaches "acts or practices" that violate ERISA and prohibited transactions violate [section 406]. Although fiduciary breaches also violate ERISA, nonfiduciaries cannot, by definition, engage in the act or practice of breaching a fiduciary duty. Nonfiduciaries, can, however, engage in the act or practice of transacting with an ERISA plan.
 
 
 25
 Id. at 31 n. 7.
 
 
 26
 We agree with the analysis of Nieto, Compton, and Rowe. Like those courts, we conclude that the fact that section 406(a) expressly imposes duties on fiduciaries rather than on parties in interest does not limit the Secretary's authority to file equitable actions against those parties in interest who have engaged in prohibited transactions. The transactions specified in section 406(a) necessarily involve two parties: the fiduciary and the party in interest. In the absence of an express limitation as to who may be named as a defendant in an equitable action filed by the Secretary, we read the statutory prohibition of certain kinds of transactions to offer some protection for ERISA plans from the misdeeds of both parties to the prohibited transaction. Importantly, the Supreme Court has noted that, in enacting section 406, "Congress' goal was to bar categorically a transaction that was likely to injure the pension plan." Commissioner v. Keystone Consol. Indus., Inc., 508 U.S. 152, ----, 113 S.Ct. 2006, 2012, 124 L.Ed.2d 71 (1993). Interpreting sections 406(a) and 502(a)(5) to allow the Secretary to bring an equitable action against a party in interest comports with that goal by providing a remedy for the injurious effects of prohibited transactions.
 
 
 27
 Additionally, we find it significant that the Secretary can bring an action to enjoin an ongoing breach of a fiduciary's duty to the plan. See ERISA, Sec. 502(a)(5), 29 U.S.C. Sec. 1132(a)(5) (authorizing civil actions "to enjoin any act or practice which violates any provision of this subchapter"). It would make little sense to grant the Secretary such broad enforcement powers to stop ongoing violations of ERISA and then to limit the Secretary's power to recover plan assets acquired through these same violations. Such an interpretation of section 502(a)(5) would effectively create a zone of immunity, protecting the illegitimate gains of parties in interest who have completed prohibited transactions that the Secretary could have enjoined while they were occurring. We therefore conclude that the language of sections 406(a) and 502(a)(5) allows the Secretary to bring an equitable action against a party in interest who has engaged in a prohibited transaction.
 
 B. Mertens
 
 28
 Notwithstanding the statutory language, Mr. Stangl argues that the Supreme Court's decision in Mertens forecloses the Secretary's action against him. In Mertens, the plaintiffs filed a claim against the actuary of their former employer's pension plan. The plaintiffs argued that the actuary's advice had caused the pension plan to be inadequately funded and sought equitable relief under section 502(a)(3) of ERISA. Both parties assumed that the plaintiffs had pled a legally sufficient cause of action, and the only issue before the Court was whether the plaintiffs truly sought equitable relief. The Supreme Court held that the plaintiffs had sought legal, not equitable, relief and that they could not recover legal damages from a nonfiduciary for knowingly participating in a fiduciary breach under section 502(a)(3) of ERISA. Mertens, 508 U.S. at ---- - ----, 113 S.Ct. at 2066-2071.[4] However, in dicta, the Mertens Court also expressed doubt as to whether ERISA provides any cause of action against nonfiduciaries for participating in a fiduciary breach:
 
 
 29
 [N]o provision explicitly requires [nonfiduciaries] to avoid participation (knowing or unknowing) in a fiduciary's breach of fiduciary duty. It is unlikely, moreover, that this was an oversight, since ERISA does explicitly impose "knowing participation" liability on cofiduciaries. See Sec. 405(a), 29 U.S.C. Sec. 1105(a). That limitation appears all the more deliberate in light of the fact that "knowing participation" liability on the part of both cotrustees and third persons was well established under the common law of trusts. In Russell, we emphasized our unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides "strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."
 
 
 30
 Id. at ----, 113 S.Ct. at 2067 (quoting Russell, 473 U.S. at 146-47, 105 S.Ct. at 3092-93) (citation omitted).
 
 
 31
 For several reasons, we do not read Mertens to preclude the Secretary's action against Mr. Stangl. Most importantly, in discussing the fact that ERISA does not expressly prohibit a nonfiduciary from participating in a fiduciary's breach of duty, the Mertens Court did not suggest a similar interpretation of the provisions regarding prohibited transactions with parties in interest. In fact, like the First Circuit in Rowe, the Court contrasted the lack of ERISA provisions regarding a nonfiduciary's participation in a fiduciary's breach with various ERISA provisions "that can be read as imposing obligations upon nonfiduciaries." Id. As an example of a provision that imposes such an obligation, the Court cited section 406(a)'s prohibition on parties in interest offering services or engaging in other transactions with the plan. Id. at ---- n. 4, at 2067 n. 4. The Court's reference to these provisions indicates that its statements regarding the lack of statutory provisions addressing a nonfiduciary's participation in a fiduciary's breach should not be read to preclude claims concerning prohibited transactions under section 406.
 
 
 32
 Moreover, in reaching its conclusion regarding actions for money damages against nonfiduciaries, the Mertens Court discussed section 502(l )(1) of ERISA, 29 U.S.C. Sec. 1132(l )(1), a provision added to ERISA in 1989. Section 502(l )(1) provides:
 
 
 33
 In the case of--
 
 
 34
 (A) any breach of fiduciary responsibility under (or other violation of) part 4 by a fiduciary, or
 
 
 35
 (B) any knowing participation in such a breach or violation by any other person,
 
 
 36
 the Secretary shall assess a civil penalty against such fiduciary or other person in an amount equal to 20 percent of the applicable recovery amount.
 
 
 37
 ERISA Sec. 502(l )(1), 29 U.S.C. Sec. 1132(l )(1) (emphasis added). The Supreme Court rejected the plaintiffs' argument that the reference to "the applicable recovery amount" established that legal damages could be recovered from a nonfiduciary participating in a fiduciary's breach. However, the Court noted that " 'equitable relief' awardable under Sec. 502(a)(5) includes restitution of ill-gotten plan assets or profits, providing an 'applicable recovery amount' to use to calculate the penalty." Mertens, 508 U.S. at ----, 113 S.Ct. at 2071 (emphasis added). The Court's definition of appropriate equitable relief under section 502(a)(5) is surely broad enough to include the recovery of the fruits of a prohibited transaction from a party in interest.
 
 
 38
 Finally, the circuits that have discussed the issue after Mertens have not found that the Supreme Court's decision bars equitable actions seeking restitution from parties in interest. See Concha, 62 F.3d at 1503-04; Compton, 57 F.3d at 287; Rowe, 20 F.3d at 33. These decisions and the Supreme Court's discussion in Mertens establish that the Court has not foreclosed the Secretary's action against Mr. Stangl.
 
 C. Legislative History
 
 39
 Through an examination of ERISA's legislative history, the district court concluded that, in spite of the broad authorization of "appropriate equitable relief" under section 502(a)(5), Congress did not intend to allow the Secretary to bring equitable actions against parties in interest engaging in prohibited transactions. The court relied primarily on the initial Senate version of ERISA, which stated that
 
 
 40
 [a]ny party in interest who participates in a transaction prohibited by this Act knowingly, or with reason to know that the transaction was a transaction to which this Act applies, shall be personally liable to make good to the fund any losses sustained by the fund resulting from such transaction, and to pay to the fund any profits realized by him from such transaction.
 
 
 41
 S. 4, 93d Cong., 1st Sess., at 180 (1973).
 
 
 42
 The district court noted that this language regarding personal liability of parties in interest was not included in the final version of the statute and that, in the final version, Congress addressed the issue of prohibited transactions in section 406(a) by imposing the obligation to avoid these transactions on fiduciaries rather than on parties in interest. The adoption of the narrower language of section 406(a) signified to the district court that Congress had rejected the notion that parties in interest were proper defendants in Secretarial actions seeking equitable relief.[5]
 
 
 43
 The Secretary responds by noting that the final version of ERISA did contain an enforcement provision significantly broader than the provision contained in the initial House version. In particular, the Secretary observes that the initial House version did not contain the broad authorization of civil actions seeking "other appropriate equitable relief" that was ultimately inserted into section 502(a)(5). See H.R. 2, 93d Cong., 1st Sess., at 150 (1973).[6]
 
 
 44
 The Secretary's response is persuasive. In light of the broad language that Congress did include in section 502(a)(5), the fact that no provision of ERISA (as ultimately enacted) expressly imposes "personal liability" on parties in interest (as the initial House version did) does not indicate that a party in interest can never be a proper defendant in an equitable action. Indeed, as we have noted, the Supreme Court has observed that "equitable relief" under section 502(a)(5) includes restitution of what parties in interest may obtain from engaging in prohibited transactions: "ill-gotten plan assets or profits." Mertens, 508 U.S. at ----, 113 S.Ct. at 2071. Moreover, the legislative history of ERISA repeatedly states that the statute was enacted to protect plan beneficiaries' interests in plan assets. See S.Rep. No. 127, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4838, 4866-71 (1974); H.Rep. No. 533, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4649-51 (1974). Given the language of section 502(a)(5) and the policy of protecting plan beneficiaries that underlies ERISA, we conclude that the legislative history does not preclude the Secretary's action against Mr. Stangl.
 
 E. Parallel Tax Provisions
 
 45
 In challenging the district court's grant of summary judgment to Mr. Stangl, the Secretary also invokes certain provisions of ERISA that authorize the Secretary of the Treasury to assess taxes on persons participating in prohibited transactions. 26 U.S.C. Sec. 4975(h) provides that, before assessing an excise tax on a party in interest, the Secretary of the Treasury must notify the Secretary of Labor and "provide him a reasonable opportunity to obtain a correction of the prohibited transaction or to comment on the imposition of such tax." As used in section 4975(h), " 'correction' ... mean[s], with respect to a prohibited transaction, undoing the transaction to the extent possible, but in any case placing the plan in a financial position not worse than that in which it would be if the disqualified person were acting under the highest fiduciary standards." 26 U.S.C. Sec. 4975(f)(5). The Secretary maintains that section 4975(h)'s reference to his "correcting" a transaction indicates that he may seek equitable relief against a party in interest under section 502(a)(5).
 
 
 46
 Like the Third Circuit, we find this argument convincing. See Compton, 57 F.3d at 286 ("Since 'correction of the prohibited transaction' implies an order of restitution directed to the party who participated in the transaction with the plan, this provision buttresses the Secretary's position."). We therefore conclude that section 4975(h)'s recognition of the Secretary's authority to correct a prohibited transaction rebuts Mr. Stangl's contention that Congress did not intend to subject parties in interest to civil actions seeking equitable relief.
 
 III. CONCLUSION
 
 47
 The language of sections 406(a) and 502(a)(5) of ERISA, the legislative history of ERISA, the decisions of other circuits, the Supreme Court's decision in Mertens, the policies underlying ERISA, and 26 U.S.C. Sec. 4975(h) establish that the Secretary may bring a civil action for equitable relief under section 502(a)(5) against a party in interest who has engaged in a prohibited transaction. Accordingly, the decision of the district court granting summary judgment to Mr. Stangl is REVERSED and the case is REMANDED to the district court for proceedings consistent with this opinion.
 
 
 
 [1]
 In his original complaint, the Secretary also sought legal damages. However, he withdrew his legal claim against Mr. Stangl during the course of this litigation when the Supreme Court issued its opinion in Mertens v. Hewitt Assocs., 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), holding that ERISA does not authorize legal damages against nonfiduciaries for participating in a fiduciary breach. Id. at ---- - ----, 113 S.Ct. at 2068-72
 
 
 [2]
 Because the district court held that ERISA does not provide a cause of action against nonfiduciaries, the district court did not reach the issue of whether Mr. Stangl was a party in interest
 
 
 [3]
 Section 502(a)(3) provides that civil actions may be brought
 by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
 ERISA, Sec. 502(a)(3), 29 U.S.C. Sec. 1132(a)(3).
 
 
 [4]
 Writing for four Justices in dissent, Justice White argued that Congress intended that ERISA provide more protection for employees and their beneficiaries than the common law provided, that the common law of trusts provided a cause of action in equity against nonfiduciaries for participating in a fiduciary breach, and that the language of ERISA did not compel the majority's conclusion. Id. at ---- - ----, 113 S.Ct. at 2072-78 (White, J., dissenting)
 
 
 [5]
 The House Conference Report explains the differences between the Senate and House versions of ERISA:
 Under the House bill, fiduciaries generally are prohibited from dealing on behalf of a plan with persons known to be parties-in-interest unless the dealings are for adequate consideration. Also, the bill generally prohibits fiduciaries from dealing with plan assets for their own accounts, receiving consideration from other parties dealing with the plan in a transaction involving the plan, or acting in a transaction involving the plan on behalf of a person who is adverse to the plan.
 Under the House bill, a fiduciary is to be personally liable for losses to the plan resulting from violations of the fiduciary responsibility rules.
 The Senate amendment includes rules governing fiduciary responsibility in both the labor and tax provisions. The labor provisions of the amendment, as in the case of the House bill, deal with the basic responsibility of fiduciaries, plan administrators, and structure; also and [sic] these provisions would establish certain transactions as prohibited transactions. Fiduciaries (and parties-in-interest) are to be personally liable under the labor provisions for losses sustained by a plan that result from a violation of these rules.
 H.R.Rep. No. 1280, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5075. In addition, the House Conference Report explains that the fiduciary was the main focus of the prohibited transaction rules in the amended version of ERISA ultimately adopted by Congress:
 The conference substitute prohibits plan fiduciaries and parties-in-interest from engaging in a number of specific transactions. Prohibited transaction rules are included both in the labor and tax provisions of the substitute. Under the labor provisions (title I), the fiduciary is the main focus of the prohibited transaction rules. This corresponds to the traditional focus of trust law and of civil enforcement of fiduciary responsibilities through the courts. On the other hand, the tax provisions (title II) focus on the disqualified person. This corresponds to the present prohibited transaction provisions relating to private foundations.
 Id. at 5087 (footnote omitted).
 
 
 [6]
 The initial House version provided that
 Civil actions under this title may be brought--
 (2) by the Secretary or by a participant, beneficiary or fiduciary for appropriate equitable relief under section 111(d)
 (3) by the Secretary, or by a participant, beneficiary, or fiduciary to enjoin any act or practice which violates any provision of this title.
 H.R. 2, 93d Cong., 2d Sess., at 150 (1974).
 Section 111(d) of the initial House version addressed a fiduciary's personal liability for breach of duty. See id. at 42.