United States Court of Appeals,

Eleventh Circuit.

Nos. 97-6058, 97-6154.

Alexis HERMAN, Secretary of the United States Department of Labor, Plaintiff-Appellant,

v.

SOUTH CAROLINA NATIONAL BANK;  William A. Fickling, Jr., et al., Defendants-Appellees.

Frances J. KNOP;  et al., Plaintiffs,

v.

CHARTER MEDICAL CORPORATION, et al., Defendants.

SOUTH CAROLINA NATIONAL BANK, Defendant-Third Party Plaintiff-Appellee,

v.

Alexis HERMAN, Secretary of the United States Department of Labor, et al., Third Party Defendants-Appellants.

SOUTH CAROLINA NATIONAL BANK, Plaintiff-Appellee,

William A. Fickling, Jr., et al., Intervenor-Plaintiffs-Appellees,

v.

Alexis HERMAN, Secretary of the United States Department of Labor, et al., Defendants-Appellants.

May 15, 1998.

Appeals from the United States District Court for the Northern District of Alabama. (Nos. CV-92-L-2858-NE, CV-91-L-1075-NE, CV-92-H-1544-NE), Seybourn H. Lynne, Judge.

Before EDMONDSON and HULL, Circuit Judges, and CLARK, Senior Circuit Judge.

HULL, Circuit Judge:

These three consolidated cases concern an ERISA trustee's paying $80 million from the

assets of an employee stock ownership plan to purchase allegedly worthless stock from a closely held corporation's owner, his relatives, and related entities.  Claiming ERISA expressly prohibits this stock purchase, the Secretary of Labor appeals the district court's grant of summary judgment to the plan's trustee and the stock sellers.[1]  After review, we reverse.

## I. FACTUAL BACKGROUND

A. *The Stock Purchase*

In 1990, South Carolina National Bank ("SCNB") was the trustee of the Charter Medical Corporation Employee Stock Ownership Plan ("the Plan").  Trustee SCNB paid $80 million from Plan assets to William A. Fickling, Jr., his relatives, and related entities (the "Ficklings") to purchase their common stock in Charter Medical Corporation ("Charter").  Mr. Fickling was the President and Chairman of the Board of Directors at Charter, a closely held corporation.  The Secretary contends that the Ficklings, as "parties in interest" under ERISA § 3(14), and SCNB, as the Plan trustee, violated ERISA § 406 when SCNB paid $80 million in Plan assets, or more than adequate consideration, to purchase the Ficklings' essentially worthless Charter stock.

To avoid conflicts of interest and self-dealing, ERISA prohibits stock transactions between a "party in interest" and a plan trustee.  Although employee stock ownership plans ("ESOPs") invest in their employers' securities and generally are exempt from this prohibition, the exemption applies only if the transaction is for "adequate consideration."[2]  Before addressing further the Secretary's

---

[1]Alexis Herman, the current Labor Secretary, has been substituted for Lynn Martin, the Labor Secretary in 1992 who initially brought this action.

[2]An employee stock ownership plan is an ERISA plan that invests primarily in the employer's stock.  29 U.S.C. § 1107(d)(6)(A).  See *infra* notes 10 and 20 for discussion of this ERISA prohibition and exemption.  Charter's stock was not publicly traded and had no established market price.  The Secretary contends the parties improperly evaluated the impact of over one and one-half billion dollars in corporate debt on Charter's solvency and the value of its stock.

action against SCNB and the Ficklings, we review the two other lawsuits about this stock purchase that became consolidated with the Secretary's action.

B. *Private Litigants' Lawsuit Against Charter, the Ficklings, and SCNB*

In 1991, private litigants brought a class action against Charter, the Ficklings, SCNB, and others (the "*Knop* action").[3] The plaintiff class consisted of the Plan's beneficiaries, who alleged violations of ERISA, federal securities laws, and state law in both this $80 million stock purchase in 1990 and an earlier $375 million stock purchase in 1988. The Secretary was not a party to the *Knop* class action.

In March 1992, the Secretary was advised that the private litigants were settling with all defendants. The Secretary responded that she was conducting her own investigation of the stock transactions and was not bound by the private litigants' settlement. The Secretary received the formal settlement documents on April 6, 1992. By this time, the Secretary's expert had advised that Charter's significant debt of one and one-half billion dollars and the stock valuation errors during the 1990 purchase made the stock essentially worthless. On April 9, 1992, the Secretary again advised the *Knop* parties that the Secretary was continuing her investigation, may bring suit, and was not bound by the *Knop* settlement. None of the parties sought to join the Secretary in the *Knop* action.

At the *Knop* fairness hearing on April 30, 1992, the district court approved the settlement. Charter made a $12.3 million financial contribution to the settlement, but the Ficklings and SCNB

---

[3]The three consolidated lawsuits are: (a) the Secretary's complaint in *Martin v. South Carolina Nat'l Bank, et al.,* No. CV-92-2858-NE (N.D.Ala. July 24, 1992) (transferred from M.D. Ga.); (b) SCNB's third party complaint against the Secretary in *Knop, et al. v. Charter Med. Corp, et al.,* No. 91-L-1075-NE (N.D.Ala. May 10, 1991) (third party complaint filed Aug. 18, 1992); and (c) SCNB's complaint against the Secretary in *South Carolina Nat'l Bank v. Martin,* No. 92-H-1544-NE (N.D.Ala. July 7, 1992).

did not contribute any money to the settlement.[4]  Nonetheless, the private litigants dismissed with

prejudice all claims against the Ficklings and SCNB. *Knop* counsel informed the district court that

the Secretary had advised the parties that the Department of Labor "had no desire to impede the

proposed settlement but that their silence should not be taken as restricting whatever they might do

in the future."

C. *SCNB's Lawsuit Against the Secretary*

Immediately after the *Knop* settlement, SCNB filed a new lawsuit against the Secretary on

July 7, 1992, and simultaneously moved in *Knop* to file a third party complaint against the

Secretary.[5]  Each case sought a declaration that the Secretary was in privity with the private *Knop*

plaintiffs and that the *Knop* settlement precluded the Secretary from additional relief in any future

lawsuit.

D. *Secretary's Lawsuit Against the Ficklings and SCNB*

On July 24, 1992, the Secretary filed her own action against the Ficklings and SCNB.[6]  The

Secretary did not sue Charter or any parties contributing monetarily to the *Knop* settlement, but sued

only the Ficklings and SCNB, who paid nothing.  The Secretary sought to recover from the Ficklings

and SCNB $80 million (offset by sums already recovered), ERISA's statutory civil penalties,

---

[4]SCNB stresses that Charter funded the *Knop* settlement as part of Charter's agreement to indemnify SCNB. The Ficklings also contend that they contributed financially because:  (a) as preferred shareholders they surrendered certain priority rights as part of a bankruptcy plan of reorganization that allowed the Plan to obtain some value for the allegedly worthless stock;  and (b) they consented to less favorable allocation of common stock.  The Secretary disputes this contention and argues that there is no evidence that these conditions resulted in a benefit to the Plan or a sacrifice by the Ficklings and that there is some evidence to suggest that the reverse is true.  In any event, given the magnitude of the Plan's losses, these contributions were negligible.

[5]*See supra* note 3.

[6]*See supra* note 3.

equitable relief for recission and disgorgement of profits, and injunctive relief.

E. *Three Lawsuits Consolidated*

In late 1992, the three lawsuits were consolidated because each involved whether the Secretary was bound by the private *Knop* settlement. In early 1993, the Ficklings and SCNB moved for summary judgment. In a June 25, 1993 order, the district court granted summary judgment for the Ficklings in a single sentence without analysis, citing only *Useden v. Acker,* 947 F.2d 1563 (11th Cir.1991). However, as discussed *infra, Useden* supports, not defeats, the Secretary's claim against the Ficklings.

In contrast to the Ficklings' motion, the district court held in abeyance SCNB's motion for partial summary judgment and permitted discovery only on the narrow issue of whether SCNB had breached its fiduciary obligations. The Secretary was prohibited from conducting discovery on SCNB's claims of laches, res judicata, and release and other issues. In 1996, the district court granted SCNB's 1993 motion for partial summary judgment, finding that laches, res judicata, and release barred the Secretary's claims. The district court did not distinguish between the Secretary's legal claims for money damages, equitable claims for disgorgement of profits, or right to assess ERISA's civil penalties, but treated all as claims for monetary relief.

Subsequently, the Secretary and SCNB settled her claims for injunctive relief, making the case final.[7] The Secretary then appealed the district court's grant of summary judgment for the Ficklings and SCNB on the Secretary's remaining legal and equitable claims and right to assess civil penalties.[8]

---

[7]SCNB agreed not to serve as a trustee for any ERISA plan for three years or ever again for Charter's Plan.

[8]We review a district court's grant of summary judgment *de novo. Useden v. Acker,* 947 F.2d 1563, 1572 (11th Cir.1991).

## II. ERISA § 406 PROHIBITS THIS STOCK TRANSACTION BETWEEN PLAN AND "PARTIES IN INTEREST"

We first examine the ERISA violation in issue.  The Secretary alleges that the Ficklings are "parties in interest," as defined under ERISA § 3(14), and that they violated ERISA § 406 by engaging in a prohibited stock transaction with SCNB.

As alleged by the Secretary, ERISA § 406 does prohibit stock transactions between an ERISA plan and a "party in interest", as follows:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> (A) sale or exchange, or leasing, of any property *between the plan and a party in interest;*
>
> ...
>
> (D) *transfer to,* or use by or for the benefit of, *a party in interest, of any assets of the plan; ....*

29 U.S.C. § 1106(a)(1)(A),(D) (ERISA § 406(a)(1)(A),(D)) (emphasis supplied).

Also, the Ficklings may be considered "parties in interest" under a number of § 3(14)'s definitions.[9]  ERISA § 3(14) defines a "party in interest" to include fiduciaries, plan employees, service providers, employers whose employees are covered by ERISA plans, employee organizations whose members are covered by a plan, and owners of 50% or more of stock in these employers and employee organizations, or a relative of such an owner.  29 U.S.C. § 1002(14)

---

[9]The district court's order, dated December 3, 1992, transferring the Secretary's action from Georgia to Alabama, made a finding that "Mr. Fickling was a "party in interest' with respect to the ESOP under ERISA, as were his relatives and affiliated business entities." *Martin v. South Carolina Bank, et al.,* No. 92-298-1-MAC(DF), at 2 (M.D.Ga. Dec. 3, 1993).  Subsequently, the district court in Alabama granted summary judgment to the Ficklings on a different basis, without completed discovery on, and without reaching, the "party in interest" issue.  Thus, our analysis assumes *arguendo* that the Ficklings are "parties in interest" as the Secretary alleges. *See also infra* note 26.

(ERISA § 3(14)).  A "party in interest" also includes employees, officers, and directors, as well as shareholders, partners, and joint venturers owning ten percent or more of entities that are themselves "parties in interest."  *Id.*

ERISA prohibits stock transactions between a plan and a "party in interest" because of the obvious conflicts of interest and the high potential for abuse and injury to the plan.  *See* 29 U.S.C. § 1106(a)(1)(A), (D) (ERISA § 406(a)(1)(A),(D)).  The Supreme Court noted that in enacting § 406(a) barring transactions between a "party in interest" and an ERISA plan, "Congress' goal was to bar categorically a transaction that was likely to injure the pension plan."  *Commissioner v. Keystone Consol. Indus., Inc.,* 508 U.S. 152, 160, 113 S.Ct. 2006, 2012, 124 L.Ed.2d 71 (1993).  It is clear that a stock transaction for more than adequate consideration between SCNB, as Plan trustee, and the Ficklings, as "parties in interest," violates § 406.[10]  The parties mainly dispute whether the Secretary can sue the Ficklings as "parties in interest" for participating in that stock transaction prohibited by § 406 or only the fiduciary SCNB.

### III. SECRETARY MAY SUE FICKLINGS FOR EQUITABLE RELIEF UNDER § 502(a)(5) FOR ACTS VIOLATING § 406

A. *Useden Distinguishes Suits Against Non-fiduciaries Under §§ 502(a)(2) and 409 From Suits Against Non-fiduciary "Parties in Interest" Under §§ 502(a)(5) and 406*

The district court granted summary judgment to the Ficklings, citing only this court's decision in *Useden v. Acker,* 947 F.2d 1563 (11th Cir.1991).  *Useden* concerns breach of fiduciary

---

[10]Since an ESOP invests mainly in an employer's securities, ERISA § 408(e) exempts from § 406's prohibited transactions an ESOP's acquisition of employer stock if (1) the acquisition is for "adequate consideration," and (2) no commission is charged with respect to the acquisition.  29 U.S.C. § 1108(e) (ERISA § 408(e)).  The Secretary alleges that the § 408(e) exemption does not apply to the Plan's stock purchase because the Plan paid more than adequate consideration for the stock.  The issue of whether the consideration was adequate was never resolved in the district court and is not before this court on appeal.  Instead, the parties and the court have assumed *arguendo* for this appeal that SCNB paid more than adequate consideration for the allegedly worthless stock.  *See infra* note 20.

duties under *§ 409* and holds that *non-fiduciaries* cannot be sued under § 502(a)(2) for *breaching fiduciary duties* under *§ 409*.  However, *Useden* supports, not defeats, the Secretary's claim against the Ficklings as "parties in interest" under *§ 406* because *Useden* goes further and indicates that *§ 502(a)(5)* authorizes suits for equitable relief against *non-fiduciary "parties in interest"* whose *acts violate § 406* without restricting the type of party who may be sued.  *See Useden,* 947 F.2d at 1581.  Comparisons of § 409 versus § 406 and § 502(a)(2) versus § 502(a)(5), plus review of *Useden,* readily reveal why the Secretary can sue the Ficklings here.

 We begin with ERISA § 502(a), where Congress outlined who may bring civil actions and for what relief.  A comparison of § 502(a)(2) with § 502(a)(5) follows:

> A civil action may be brought—
>
> ...
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary *for appropriate relief under section [409];*[11]
>
> ...
>
> (5) ... by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) *to obtain other appropriate equitable relief* (i) *to redress such violation* or (ii) to enforce any provision of this subchapter;....

29 U.S.C. § 1132(a)(2), (5) (ERISA § 502(a)(2), (5)) (emphasis supplied).  Section 502(a)(5) authorizes the Secretary to obtain "appropriate equitable relief" to redress ERISA violations.  While § 502(a)(5) limits the Secretary to only "equitable relief," § 502(a)(5) does not restrict "the types of parties who can be so sued."  *Useden,* 947 F.2d at 1581.  Section 502(a)(5) does not restrict equitable relief to being against only fiduciaries.

In contrast, the Secretary may sue under § 502(a)(2), but only "for appropriate relief under

---

[11]29 U.S.C. § 502(a)(2) refers to appropriate relief under § 1109 of Title 29, the codified version of § 409 of ERISA.

section [409]."  Section 502(a)(2), in effect, incorporates § 409, and thereby limits relief to that available under § 409.  We thus turn to § 409, which provides that only *fiduciaries* "shall be personally liable" for breach of *fiduciary* duties, as follows:

> *Any person who is a fiduciary* with respect to a plan who breaches any of the responsibilities, obligations, or duties *imposed upon fiduciaries* by this subchapter *shall be personally liable* to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of *such fiduciary* which have been made through use of assets of the plan *by the fiduciary,* and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of *such fiduciary.*

29 U.S.C. § 1109(a) (ERISA § 409(a)) (emphasis supplied).

The *Useden* court read the terms of § 409 and § 502(a)(2), referencing § 409, as limiting relief to *fiduciaries* for breaches of *fiduciary* duties.  *Useden* held that the defendants bank and attorneys, who had advised the former plan fiduciary trustee, were not liable for *breaches of fiduciary* duties under §§ 409 and 502(a)(2) because the bank and attorneys had not acquired *fiduciary status* in the financial transactions in issue.  *Useden,* 947 F.2d at 1572-79.

Importantly for this case, *Useden* went further and pointed out significant differences between § 409 and § 406 and between § 502(a)(2) and § 502(a)(5).  *Useden* first noted the absence of textual treatment of non-fiduciaries in § 409 and § 409's express language limiting personal liability to fiduciaries.  *Useden* then contrasted that with § 3(14)(B)'s broad definition of "parties in interest with whom plans are prohibited to enter into certain transactions under section 406(a)" and § 502(a)(5)'s authorization of suit for equitable relief for "any act or practice" violating ERISA "without restricting the type of parties who may be sued."  *Id.* at 1581.  *Useden* summarized these important differences in these ERISA statutes, as follows:

> In the present case, appellant would have us ignore the obvious care with which ERISA's remedial provisions are formulated, instead requiring us to supplement the statute with a substantive right against a party that Congress readily could have chosen to reach. Congress clearly contemplated the involvement of non-fiduciary parties with employee benefit plans when it drafted provisions of ERISA. *For example, ERISA sections 502(a)(3)*

*and 502(a)(5) authorize suits to enjoin or obtain other equitable relief for "any act or practice" violating either the statute or the terms of a plan, without restricting the types of parties who may be so sued. ERISA section 3(14)(B), moreover, broadly defines the "parties in interest" with whom plans are prohibited to enter into certain transactions under section 406(a).* Significantly, however, Congress expressly limited the scope of sections 502(a)(3) and 502(a)(5) to equitable remedies, and likewise limited section 409(a) to provide a right of action only against fiduciaries. It is telling that, *despite textual treatment of non-fiduciaries in various other parts of the ERISA scheme,* provisions [§§ 409 and 502(a)(2) ] relevant to appellant's theory contain no textual support for a claim for monetary damages against non-fiduciaries. We cannot infer that Congress's silence is accidental in an area where Congress has already said so much out loud.

*Id.* at 1581-82 (citations omitted) (emphasis supplied). Construing first §§ 409 and 502(a)(2), *Useden* holds only that *non-fiduciaries* cannot be sued for *breach of fiduciary duties* because § 409 contains no references to non-fiduciaries and because Congress expressly limited liability in §§ 409 and 502(a)(2) to fiduciaries.

In reaching this holding, *Useden* then contrasts §§ 409 and 502(a)(2) with §§ 406 and 502(a)(5) and answers in dicta the very different question posed here regarding who can be sued for equitable relief under § 502(a)(5) for engaging in stock transactions prohibited by § 406. In short, who can the Secretary sue for acts that violate ERISA § 406? *Useden* directly points to a "party in interest" who participates in a prohibited transaction in violation of § 406 as an example of a non-fiduciary against whom relief may be sought under § 502(a)(5). *Id.* at 1581. This is precisely the Secretary's claim against the Ficklings in this case.[12] In addition to pointing out ERISA's textual treatment of "parties in interest" in § 406, *Useden* goes further and concludes these "parties in interest" can be sued for equitable relief under § 502(a)(5) because § 502(a)(5) does not restrict the

---

[12]In holding that a non-fiduciary cannot be sued for breach of fiduciary duties in *Reich v. Rowe,* 20 F.3d 25 (1st Cir.1994), the First Circuit also compared § 409 against § 406 and contrasted actions against non-fiduciaries for participation in a fiduciary's breach with actions against non-fiduciary "parties in interest" for participation in prohibited transactions. The First Circuit concluded that "[a]lthough fiduciary breaches also violate ERISA, non-fiduciaries cannot, by definition, engage in the act or practice of breaching a fiduciary duty. Non-fiduciaries can, however, engage in the act or practice of transacting with an ERISA plan." *Id.* at 31 n. 7.

type of parties who may be sued.

B. *Other Circuits Hold Non-fiduciary "Parties in Interest" May Be Sued for Violating § 406*

Similar to *Useden* 's dicta, other circuit courts have held uniformly that an ERISA-defined "party in interest," like the Ficklings, may be sued for equitable relief under either § 502(a)(5) or § 502(a)(3) when that "party in interest" violates ERISA by engaging in transactions with fiduciaries prohibited by § 406. *See Reich v. Stangl,* 73 F.3d 1027 (10th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 48, 136 L.Ed.2d 13 (1996) (§ 502(a)(5)); *Landwehr v. DuPree,* 72 F.3d 726 (9th Cir.1995) (§ 502(a)(3)); *Reich v. Compton,* 57 F.3d 270 (3d Cir.1995) (§ 502(a)(5)); *Nieto v. Ecker,* 845 F.2d 868 (9th Cir.1988) (§ 502(a)(3)); *see also Reich v. Rowe,* 20 F.3d 25 (1st Cir.1994) (§ 502(a)(5)). Where a fiduciary and a "party in interest" directly engage in a transaction that violates § 406, no circuit has limited relief under § 502(a)(5) to only the fiduciary. Instead, reading §§ 502(a)(5) and 406 together, these circuits have held that the ERISA "party in interest" who benefitted from the impermissible transaction with the fiduciary is liable under ERISA for equitable relief and is required to disgorge ill-gotten assets from the ERISA plan.

We agree with the panel's dicta in *Useden* and other circuits addressing this same issue, and now hold that under §§ 502(a)(5) and 406 the Secretary may seek equitable relief from "parties in interest" to transactions prohibited by § 406. As *Useden* points out, § 502(a)(5) is aimed at such " "act[s] or practice[s] violating [ERISA]' without restricting the types of parties who may be so sued." *Id.* at 1581.

C. *Supreme Court's Mertens*

The Ficklings emphasize that § 406 begins, like § 409, with the term "fiduciary" and that § 406 provides that a fiduciary shall not cause the plan to enter into prohibited transactions with "parties in interest." The Ficklings argue that § 406 imposes a duty on only fiduciaries not to cause

a plan to enter into transactions with "parties in interest," but does not prohibit a "party in interest" from entering into that same transaction with a fiduciary. This argument, however, ignores key differences in the statutory language of § 406 and § 409, plus the Supreme Court's recent decision in *Mertens* recognizing § 406's prohibition on "parties in interest" engaging in transactions with an ERISA plan.

First, as to the statutory language, § 409 provides that a fiduciary "shall be personally liable" for breaches of fiduciary duties. In contrast, § 406 does not address, much less limit, who shall be personally liable; instead § 406 prescribes the type of transactions that ERISA prohibits. While § 406 does instruct fiduciaries—typically the plan trustee—not to cause the plan to enter into transactions with "parties in interest," § 406 also serves to prohibit transactions between a fiduciary and a "party in interest." Even if § 406 imposes an affirmative duty on fiduciaries not to cause the plan to enter into certain prohibited transactions, this in no sense lessens the fact that a transaction between a plan and a "party in interest" remains a prohibited transaction under § 406. *See Useden,* 947 F.2d at 1581-82; *Reich v. Stangl,* 73 F.3d 1027, 1030-31 (10th Cir.1996); *Reich v. Rowe,* 20 F.3d 25, 31 n. 7 (1st Cir.1994); *Reich v. Compton,* 57 F.3d 270, 285-86 (3d Cir.1995); *Nieto v. Ecker,* 845 F.2d 868, 873-74 (9th Cir.1988).

Second, § 502(a)(2) limits the Secretary to only "appropriate relief under section [409]," and then § 409 limits personal liability to fiduciaries. In contrast, § 502(a)(5), as *Useden* recognizes, permits the Secretary to obtain equitable relief to address any act or practice that violates § 406 without restricting who may be sued. *See Useden,* 947 F.2d at 1581. As "parties in interest" to a prohibited transaction, the Ficklings engaged in an act or practice that violates ERISA. Section 502(a)(5) thus expressly authorizes the Secretary to obtain appropriate equitable relief from the Ficklings to redress that ERISA violation. While the Ficklings may not be subjected to legal claims

for compensatory damages for joining in a fiduciary's breach under § 409, they may be liable as "parties in interest" for equitable disgorgement of their profits received from engaging in a prohibited transaction in violation of § 406.

More importantly, a recent Supreme Court decision supports *Useden* 's analysis of § 406. In *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 260-61, 113 S.Ct. 2063, 2070-71, 124 L.Ed.2d 161 (1993), the Supreme Court acknowledged in dicta that non-fiduciaries may be sued and required under § 502(a)(5) to disgorge illgotten plan assets or profits obtained through participation in transactions prohibited by § 406. The Supreme Court explained that "the "equitable relief' awardable under § 502(a)(5) includes restitution of ill-gotten plan assets or profits...." *Mertens,* 508 U.S. at 260, 113 S.Ct. at 2070-71. The Supreme Court held that non-fiduciaries may not be liable for the legal remedy of compensatory damages for breach of fiduciary duties because ERISA contains no provision requiring non-fiduciaries to avoid participation in a fiduciary's breach of fiduciary duty.

However, the Supreme Court also contrasted the lack of any ERISA provision regarding a non-fiduciary's participation in a fiduciary's breach with other ERISA provisions, such as § 406 "that can be read as imposing obligations upon nonfiduciaries...." *Id.* at 253-54, 113 S.Ct. at 2067. As an example of a provision that imposes such an obligation, the Supreme Court cited § 406(a)'s prohibition on "parties in interest" offering services or engaging in other transactions with the plan. *Id.* at 254 n. 4, 113 S.Ct. at 2067 n. 4. The Supreme Court further stated that professional service providers "must disgorge assets and profits obtained through participation as parties-in-interest in transactions prohibited by § 406, and pay related civil penalties or excise taxes...." *Id.* at 262, 113 S.Ct. at 2071-72 (citations omitted).

While *Mertens* involved service providers, the concept that "parties in interest" can be sued

for disgorgement of profits for participating in a transaction prohibited by § 406 is no less applicable to other non-fiduciary "parties in interest," such as the Ficklings.[13]  *See* 29 U.S.C. § 1002(14)(B) (ERISA § 3(14)(B)) (including service providers within the definition of "parties in interest").  Even though disgorgement of profits may produce money, *Mertens* makes it clear that disgorgement of profits is a distinctly equitable remedy different from the legal remedy of compensatory damages for breach of fiduciary duty.  *See Mertens* 508 U.S. at 260, 113 S.Ct. at 2070-71.  The Court's definition of appropriate equitable relief under § 502(a)(5) clearly encompasses the fruits of a prohibited transaction from "parties in interest" like the Ficklings.[14]

In sum, under § 502(a)(5), the Secretary may sue the Ficklings as "parties in interest" for equitable relief for engaging in a prohibited transaction with SCNB in violation of § 406.  Therefore, the district court erred in granting summary judgment to the Ficklings.

## IV. PRIVATE LITIGANTS' SETTLEMENT DOES NOT BAR SECRETARY'S ACTION

The Ficklings and SCNB next contend that the *Knop* private settlement bars the Secretary's action against them.  This issue requires us to examine the Secretary's special statutory role in seeking relief and assessing civil penalties for ERISA violations.

A. *Secretary's Statutory Role*

In § 502(a), Congress granted the Secretary an independent and unqualified right to sue and

---

[13]The Third and Tenth Circuits also found that the Supreme Court in *Mertens* implied that a non-fiduciary "party in interest" may be liable under § 502(a)(5) for participating in transactions prohibited by § 406.  *Reich v. Compton,* 57 F.3d 270, 285 (3rd Cir.1995);  *Reich v. Stangl,* 73 F.3d 1027, 1032 (10th Cir.1996).

[14]In *Lockheed Corp. v. Spink,* 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996), the Supreme Court acknowledged that *Mertens* 's statements about § 406 were dicta, but declined to retreat from that dicta and stated again, albeit in dicta, that "a party in interest who benefitted from an impermissible transaction can be held liable under ERISA."  *Id.* at ---- n. 3, 116 S.Ct. at 1789 n. 3.

seek redress for ERISA violations because ERISA plans significantly affect the "national public interest." ERISA itself contains a declaration of public purpose that recognizes that the economic impact of private benefit plans affects the "national public interest."[15] *See* 29 U.S.C. § 1001(a) (ERISA § 2(a)). Private ERISA litigants seek to redress individual grievances. However, in suing for ERISA violations, the Secretary seeks not only to recoup plan losses, but also to supervise enforcement of ERISA, to guarantee uniform compliance with ERISA, to expose and deter plan asset mismanagement, to protect federal revenues, to safeguard the enormous amount of assets and investments funded by ERISA plans, and to assess civil penalties for ERISA violations.

One circuit court succinctly summarized the Secretary's national public interest in bringing ERISA actions as ensuring "the financial stability of billions of dollars of assets which in turn have a monumental effect on not only the Treasury of the United States, but on the national economy and commerce as well." *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 692 (7th Cir.1986) (en banc). In addition to recovering plan losses, the Secretary "has an even stronger and paramount obligation to protect the very integrity, heart and lifeline of the program itself." *Id.* at 692-93.

ERISA's legislative history also emphasizes the Secretary's national public interest in deterrence, including the need for the Labor Department to have "broad authority to monitor employee benefit plans and deter violations of the law," and to "restructure its enforcement efforts to emphasize deterrence." H. Conf. Rep. No. 101-386, at 431-32 (1989), *reprinted in* 1989

---

[15]ERISA's statement of purpose provides "that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is [sic] increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; *that they are affected with a national public interest; ...*" 29 U.S.C. § 1001(a) (ERISA § 2(a)) (emphasis supplied).

U.S.C.C.A.N. 3018, 3035.[16] The congressional Conference Committee concluded that the Secretary

must have and use enforcement powers and civil penalties to make ERISA meaningful, as follows:

> [I]t has become apparent that the Department must use its enforcement powers more vigorously to make the protection of ERISA meaningful. The conferees believe strengthened civil penalties will better enable the Department to protect participants and beneficiaries. The conferees further believe that the need for strengthened enforcement and deterrence of violations of ERISA applies not only to the Department of Labor, but to judicial oversight of private rights of action affecting employee benefit plans. It remains the intent of Congress that the courts use their power to fashion legal and equitable remedies that not only protect participants and beneficiaries but deter violations of the law as well.

*Id.* at 3035-36. Against this statutory background, we examine why the private litigants' settlement

in *Knop* does not bar the Secretary's action here.

B. *Res Judicata*

The district court incorrectly held that the private litigants' settlement barred the Secretary's

claims under the doctrine of res judicata or claim preclusion.[17] This doctrine does not apply unless

"the parties to both actions, or those in privity with them, are identical." *Richardson v. Alabama

State Bd. of Educ.,* 935 F.2d 1240, 1244 (11th Cir.1991); *see also Hart v. Yamaha-Parts Distributs.,

Inc.,* 787 F.2d 1468, 1471-72 (11th Cir.1986). This circuit has held that " "[a] nonparty to a prior

decision cannot be bound by it unless he had sufficient identity of interest with a party that his

interests are deemed to have been litigated.' " *In re Birmingham Reverse Discrimination*

---

[16]In 1989, Congress expanded § 502 to confer additional enforcement powers upon the Secretary, including assessment of civil penalties against plan administrators, § 502(c)(2), "parties in interest," § 502(i), fiduciaries, § 502(*l*)(1)(A), (m), and, in some instances, against "any person," § 502(c)(4), (c)(5), (*l*)(1)(B). Omnibus Budget Reconciliation Act of 1989, Pub.L. 101-239, 103 Stat. 2123. These civil penalties go directly to the United States Treasury. While the Secretary must assess civil penalties, none of the contested issues about these civil penalties is presently before the court on appeal.

[17]Application of res judicata presents questions of law reviewed *de novo. Richardson v. Miller,* 101 F.3d 665, 667-68 (11th Cir.1996); *Riddle v. Cerro Wire & Cable Group, Inc.,* 902 F.2d 918, 921-22 (11th Cir.1990). For the same reasons that res judicata principles do not apply in this case, the *Knop* plaintiffs could not release the Secretary's claims against the defendants.

*Employment Litigation,* 833 F.2d 1492, 1498 (11th Cir.1987) *aff'd sub nom. Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (quoting *Wilson v. Attaway,* 757 F.2d 1227, 1237 (11th Cir.1985)). The doctrine does not apply here because the Secretary was not a party to the *Knop* settlement and has national public interests separate and distinct from those of the *Knop* private litigants.

Every circuit addressing the issue has held that the Secretary is not bound by prior private litigation when the Secretary files an independent action to address ERISA violations. *See, e.g., Beck v. Levering,* 947 F.2d 639, 642 (2d Cir.1991), *cert. denied sub nom., Levy v. Martin,* 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992); *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 690-94 (7th Cir.1986); *Donovan v. Cunningham,* 716 F.2d 1455, 1462-63 (5th Cir.1983); *see also Brock v. Gillikin,* 677 F.Supp. 398, 402 (E.D.N.C.1987). Each court recognized that the Secretary's national public interests in bringing an ERISA enforcement action are wholly distinct and separate from those of private litigants who seek to redress individual grievances or recoup plan losses for their personal benefit as plan beneficiaries. *See, e.g., Fitzsimmons,* 805 F.2d at 693-94. The courts note that under ERISA's statutory framework, private plaintiffs do not adequately represent, and are not charged with representing, the broader national public interests represented by the Secretary.[18]

A previous ERISA decision from this circuit foreshadows our similar conclusion that the

---

[18]The district court cited footnote 9 in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) for the proposition that the Secretary sues only in a representative capacity. However, *Russell* 's footnote 9 addressed only actions under § 502(a)(2) for breach of fiduciary duties under § 409. *Russell* did not involve res judicata or a Secretary's claim under § 502(a)(5) for equitable relief against "parties in interest" participating in a prohibited transaction in violation of § 406. *Russell* also points out that § 502(a)(2) "authorizes suits by four classes of party-plaintiffs: the Secretary of Labor, participants, beneficiaries, and fiduciaries." 473 U.S. at 142 n. 9, 105 S.Ct. at 3090 n. 9. In contrast, ERISA separates the Secretary's right to sue for ERISA violations in § 502(a)(5) from the participant's, beneficiary's, and fiduciary's right to sue for ERISA violations in § 502(a)(3).

*Knop* private settlement does not bar the Secretary's action here. In *Campbell v. Hall-Mark Electronics Corp.,* 808 F.2d 775 (11th Cir.1987), this court affirmed a denial of the Secretary's motion to intervene to oppose a plan participants' class action settlement. This court noted that the Secretary's interests were not prejudiced significantly by the settlement because "the Secretary certainly may continue to litigate his own case in pursuit of whatever broader public policy interests he deems important." *Id.* at 779. *Campbell* recognized that the Secretary has an independent right to sue. A corollary to *Campbell* is that a private litigation settlement does not preclude the Secretary's separate action.

Similar to this case, the Secretary's main objection to the private settlement in the Seventh Circuit's *Fitzsimmons* decision was that the private "recovery was wholly inadequate in light of the number and dollar amount of the claims against the former trustees and also that the settlement agreement failed to allow recovery from the personal assets of the former trustees." *Fitzsimmons,* 805 F.2d at 686. After extensive review of ERISA's statutory framework and purposes, the Seventh Circuit en banc held directly that the private settlement did not bar the Secretary's independent right to sue. *Id.* at 694.[19]

These ERISA cases are consistent with the well-established general principle that the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests. *See Hathorn v. Lovorn,* 457 U.S.

---

[19]Appellees quote selective statements from *Fitzsimmons* and argue that a private settlement limits the Secretary to only injunctive relief, even if the Secretary can sue independently. *Fitzsimmons* 's discussion about the separate interest of the Secretary in obtaining injunctive relief is only one of the many examples of the Secretary's separate interests discussed in *Fitzsimmons.* The Seventh Circuit also discusses the Secretary's separate legal interests in protecting a plan's financial stability, in obtaining disgorgement of illegal profits, in preventing unjust enrichment, in restoring plan assets, in protecting beneficiaries' incomes, and in deterring future ERISA violations, all of which implicate monetary recoveries. (The civil penalties, enacted in 1989, were not in effect when *Fitzsimmons* was decided.)

255, 268 n. 23, 102 S.Ct. 2421, 2430 n. 23, 72 L.Ed.2d 824 (1982); *City of Richmond v. United States,* 422 U.S. 358, 373 n. 6, 95 S.Ct. 2296, 2305 n. 6, 45 L.Ed.2d 245 (1975); *Sam Fox Publ'g Co., Inc. v. United States,* 366 U.S. 683, 689-90, 81 S.Ct. 1309, 1313, 6 L.Ed.2d 604 (1961); *United States v. East Baton Rouge Parish Sch. Bd.,* 594 F.2d 56, 58 (5th Cir.1979). In *East Baton Rouge Parish School Board,* this court also recognized this general principle that a private plaintiff's prior litigation does not bar the government's action, stating:

> [T]he district court's conclusion [that the private plaintiffs and the United States were identical] is directly contrary to the general principle of law that the United States will not be barred from independent litigation by the failure of a private plaintiff. This principle is based primarily upon the recognition that the United States has an interest in enforcing federal law that is independent of any claims of private citizens. In the present context the Supreme Court has characterized this as "the highest public interest in the due observance of all constitutional guarantees." Also, any contrary rule would impose an onerous and extensive burden upon the United States to monitor private litigation in order to ensure that possible mishandling of a claim by a private plaintiff could be corrected by intervention.

*East Baton Rouge Parish Sch. Bd.,* 594 F.2d at 58 (quoting in part *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) (citations omitted)).

Subsequently, the Fifth Circuit directly applied this same principle to an ERISA case similar to this one, *Donovan v. Cunningham,* 716 F.2d 1455, 1462-63 (5th Cir.1983). In *Donovan,* an ESOP trustee allegedly had paid more than adequate consideration for the stock of the company's president.[20] The Fifth Circuit concluded that the Secretary's interest was different from private plaintiffs' interests and, thus, the Secretary was not precluded from bringing an independent action

---

[20]The Fifth Circuit held that the "adequate consideration" exemption in ERISA § 408 was not applicable and thus the stock transaction was prohibited by ERISA § 406. *Donovan* discusses at length the mechanics of ESOPs, the duties of ESOP fiduciaries under ERISA, and the nature of the inadequate consideration exemption in ERISA § 408. *See generally Donovan v. Cunningham,* 716 F.2d 1455 (5th Cir.1983); *see also supra* note 10.

for ERISA violations.  *Id.*[21]

The ERISA enforcement scheme, carefully constructed by Congress, is undermined if private litigants can sue ERISA violators first, reach a settlement, and bar the Secretary's action.  The terms of the *Knop* private settlement illustrate why this result is not what Congress intended, or provided, in ERISA.  The *Knop* settlement recovered from Charter only a small fraction of the Plan's $80 million in assets lost in the stock purchase.  The private plaintiffs released and dismissed with prejudice both SCNB and the Ficklings despite having alleged serious ERISA violations against them and even though they made a negligible contribution to the settlement.  Since only the Secretary can assess civil penalties, none were paid.[22]

---

[21]Appellees contend *Donovan* supports their defense that the Secretary's independent action is limited to injunctive relief.  We disagree.  *Donovan* 's discussion of injunctive relief concerned only whether the Secretary's action was moot because the private parties dissolved the ESOP as part of their settlement.  In fact, the *Donovan* court noted that whether the Secretary's equitable claim for disgorgement was barred was not addressed by the district court and remanded that issue because "the parties have not adequately addressed the issues raised by these remedial arguments in the special context of ERISA."  *Donovan,* 716 F.2d at 1462-63 & n. 10.

[22]Defendants rely heavily on EEOC cases from other circuits that preclude the EEOC from recovering monetary relief for private individuals who already have settled in their own name.  However, this circuit has recognized that the interests of the EEOC and private litigants at times "are not necessarily compatible," and "are not always identical."  *Riddle v. Cerro Wire & Cable Group, Inc.,* 902 F.2d 918, 922-23 (11th Cir.1990) (holding private litigant's Title VII claims not barred by EEOC's settled suit).  *Riddle* concluded that although the EEOC is able to recover damages for back pay and benefits, the EEOC is primarily interested in preventing employment discrimination in the workplace;  whereas, the aggrieved individual is more interested in "specific personal relief" in her private action.  *Id.* at 922-23.

Defendants' reliance on EEOC cases also ignores the different statutory enforcement schemes of Title VII and the ADEA, which reflect Congress's intent to limit multiple suits.  Title VII and the ADEA require a private plaintiff to file a discrimination charge with the EEOC before suing.  42 U.S.C. § 2000e-5(b), (e), and (f);  29 U.S.C. § 626(d).  The ADEA also terminates a private plaintiff's right of action under the ADEA upon "commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter."  29 U.S.C. § 626(c)(1).  In contrast, ERISA gives plan beneficiaries and the Secretary independent rights of action, does not require private plaintiffs to file charges with the Secretary before suing, and

While private plaintiffs understandably may be willing to compromise claims to gain prompt and definitive relief, the *Knop* settlement does not further the broader national public interests represented by the Secretary and reflected in Congress's delegation of ERISA enforcement powers to the Secretary. The national public interest in deterrence of asset mismanagement suffers if private parties can release claims against ERISA violators for negligible financial recovery and thereby immunize plan trustees and "parties in interest" from ERISA violations. Furthermore, the public treasury is ill-served by denying the Secretary the opportunity to assess civil penalties, expressly authorized by Congress to deter ERISA violations, as well as the occasion to ensure that the Plan receives full value for the millions of dollars in tax subsidies.

C. *ERISA § 502(h)*

The district court emphasized that ERISA § 502(h) requires private litigants to serve their complaint on the Secretary and gives the Secretary discretion to intervene. *See* 29 U.S.C. § 1132(h) (ERISA § 502(h)). The purpose of § 502(h) is to provide the Secretary notice of ongoing private lawsuits. *See Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 691 (7th Cir.1986) (en banc). In § 502(h) Congress gave the Secretary discretion to intervene, but chose not to require the Secretary to do so. As the Seventh Circuit noted, Congress "never mandated that the Secretary must intervene in each and every piece of litigation or forever be barred by the doctrine of res judicata." *Id.* As this court previously recognized, "[t]he courts should not jam judicially created doctrines such as res judicata into the gears of Congress' carefully crafted statutory machinery." *United States v. Barnette,* 10 F.3d 1553, 1561 (11th Cir.1994).

Given the volume of cases the Department of Labor monitors, courts recognize that it is

---

nowhere forecloses private actions after the Secretary files suit, or, the Secretary's suit after a private action commences.

unreasonable and unwise to require the Secretary to intervene in every ERISA action or be precluded.[23]  *See, e.g., Donovan v. Cunningham,* 716 F.2d 1455, 1462 (5th Cir.1983) (stating that to bar Secretary's ERISA action as a result of private settlement "would impose an onerous and extensive burden upon the United States to monitor private litigation in order to ensure that possible mishandling of a claim by a private plaintiff could be corrected by intervention").  Likewise, we decline to mandate judicially that the Secretary must intervene or be barred because this would frustrate Congress's express decision to leave intervention to the Secretary's "discretion" in § 502(h) and would permit defendants violating ERISA to settle quickly with private plaintiffs and defeat the Secretary's enforcement powers granted by Congress.

D. *Laches*

The district court also incorrectly held that the doctrine of laches precluded the Secretary's action against SCNB. "It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940);  *United States v. Fernon,* 640 F.2d 609, 612 (5th Cir. Unit B Mar.1981) (following *Summerlin* ).  This principle protects public rights vested in the government for the benefit of all from "the inadvertence of the agents upon which the government must necessarily rely." *United States v. Alvarado,* 5 F.3d 1425, 1427 (11th Cir.1993);  *see also United States v. Arrow Transp. Co.,* 658 F.2d 392, 394-95 (5th Cir. Unit B Oct. 1981) ("Although the fact situation describes a textbook case of laches, that defense cannot be asserted

---

[23]In 1989, the congressional Conference Committee, reporting on the civil penalties in § 502(*l*) noted that the Department of Labor was responsible for approximately 5.5 million employee benefit plans holding $2 trillion in assets and that the Department's resources had not kept pace with the growing importance of the benefits to the public, the expanding amount of plan assets, or the increasing number of plans.  H.R. Conf. Rep. No. 101-386, at 432 (1989), *reprinted in* 1989 U.S.C.C.A.N. 3029, 3035.

against the United States in its sovereign capacity to enforce a public right or to protect the public interest.").

To overcome this accepted rule, the district court relied upon Title VII cases. However, this circuit permits laches to bar an EEOC suit only because Title VII contains no statute of limitations. *See e.g., EEOC v. Dresser Indus., Inc.,* 668 F.2d 1199, 1201-02 (11th Cir.1982) ("Laches is an equitable doctrine designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit *in the absence of an appropriate statute of limitations.*") (emphasis supplied); *see also EEOC v. Vucitech,* 842 F.2d 936, 942 (7th Cir.1988); *Boone v. Mechanical Specialties Co.,* 609 F.2d 956, 959 (9th Cir.1979); *EEOC v. Liberty Loan Corp.,* 584 F.2d 853, 856 (8th Cir.1978).

In contrast, ERISA contains a detailed statute of limitations for actions regarding certain fiduciary breaches and ERISA violations. The Secretary filed her lawsuit within the time permitted by ERISA.[24] The rationale in EEOC suits for departing from the accepted rule is not present here.[25] Given the Supreme Court's mandate that the judiciary not tamper with ERISA's enforcement scheme, *Massachusetts Mut. Life Ins. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3092-93, 87 L.Ed.2d 96 (1985), and our circuit's recognition of the importance of ERISA's time lines, *Brock v. Nellis,* 809 F.2d 753, 754 (11th Cir.1987), the district court erred in extending the laches exception in Title VII

---

[24]Congress has specified the limitations period for a variety of circumstances, providing that an ERISA plaintiff must sue within six years from the last breach or violation, within three years from the date of actual knowledge of a breach or violation, or, in the case of fraud or concealment, within six years from the date of discovery of the breach or violation. 29 U.S.C. § 1113 (ERISA § 413). Allowing the federal government, in effect, to be estopped frustrates federal statutes and infringes upon Congress's exclusive authority to make law.

[25]Neither the district court nor the defendants cite any authority grafting the EEOC exception onto ERISA. Defendants do cite *Martin v. Consultants & Adm'rs, Inc.,* 966 F.2d 1078 (7th Cir.1992), but the majority in *Martin* pretermitted deciding whether laches applied by finding "the elements of laches have not been met in the case before us." 966 F.2d at 1091. *But see* 966 F.2d at 1100 (Posner, J., concurring).

to ERISA actions. *See Reich v. Valley Nat'l Bank of Arizona,* 837 F.Supp. 1259, 1308-09 (S.D.N.Y.1993); *First Bank Sys., Inc. v. Martin,* 782 F.Supp. 425, 426-27 (D.Minn.1991); *Donovan v. Schmoutey,* 592 F.Supp. 1361, 1403 (D.Nev.1984).

## V. CONCLUSION

In conclusion, the *Knop* private settlement does not bar the Secretary's independent right to sue under ERISA in this case. Accordingly, the district court erred in granting summary judgment in favor of the defendants SCNB and the Ficklings. The Secretary's action may proceed against SCNB as a fiduciary for legal and equitable relief and civil penalties. The Secretary's action may proceed against the Ficklings as "parties in interest" for civil penalties and equitable relief, including but not limited to disgorgement of profits, recission, and restitution of Plan losses.[26]

Given our declaration that the Secretary's action may proceed, SCNB's third-party complaint seeking declaratory judgment in the *Knop* action and SCNB's separate declaratory judgment action are now resolved by this appeal. The court directs that judgment on the declaratory judgment issue be entered in favor of the Secretary.

For the above reasons, we REVERSE the district court's orders granting summary judgment and VACATE the final judgments entered in favor of the defendants SCNB and the Ficklings. The action is REMANDED for further proceedings consistent with this opinion.

---

[26]When the case returns to the district court, each party should be allowed to complete discovery, including on whether each of the Fickling defendants is a "party in interest" under ERISA § 406. Also, the Ficklings argue that the Secretary should not be able to rely on § 3(14)(H) as to certain Fickling defendants because the Secretary referred to only § 3(14)(G), (E), and (F) as to those particular persons or entities. However, the Secretary's allegation, that the Ficklings are "parties in interest" under § 3(14) engaging in a transaction prohibited under § 406, was more than sufficient to put the Ficklings on notice of the Secretary's claims. Any failure to specify each and every sub-subsection of § 3(14) as to each and every person is immaterial.