George C. **HILLMAN** and Lars I. Ivarson, Plaintiffs–Appellees,

v.

**RESOLUTION TRUST CORPORATION,** Defendant–Appellant.

No. 94–2691.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1995.

Decided Sept. 14, 1995.

George C. Hillman, pro se.

Lars I. Ivarson, pro se.

E. Glenn Rippie, F. Thomas Hecht, (argued), Karen A. Dort, Hopkins & Sutter, Chicago, IL, for defendant-appellant.

Before CUMMINGS, COFFEY and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

The Resolution Trust Corporation ("RTC"), as receiver for Independence Federal Savings ("Independence"), sought to recover on a group of notes (the "Notes") written by plaintiffs and held by the bank. Plaintiffs defended against collection on the Notes while also bringing a fraud claim against the RTC as receiver for Independence. Neither side emerged victorious: the district judge granted the RTC summary judgment on its collection attempt but held that plaintiffs could proceed with their fraud claim based on statements contained in an offering memorandum. The RTC contends that this latter claim involving the offering memorandum is precluded by the *D'Oench* doctrine[1] and 12 U.S.C. § 1823(e), common law and statutory bars to the raising of affirmative defenses or claims against the RTC's attempt to collect as receiver on obligations owed to insolvent institutions.[2] We have this

---

1. See *D'Oench, Duhme & Co. v. F.D.I.C.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956.

2. Several recent cases have suggested that the common law *D'Oench* doctrine did not survive the arguably narrower statutory framework embodied in 12 U.S.C. §§ 1823(e) and 1821(d)(9)(A). *Murphy v. F.D.I.C.*, 61 F.3d 34 (D.C.Cir.1995) (holding that *D'Oench* is no long-

er valid); see also *RTC v. Kennelly*, 57 F.3d 819, 822 n. 3 (9th Cir.1995) (commenting on this possibility). Neither party to the instant litigation briefed this question, and it is not now before the Court and is not essential to our disposition of this case. It is likely to be central to future actions brought by the RTC, however, and is for that reason worth mentioning here.

case on interlocutory appeal, ostensibly to resolve the applicability of *D'Oench* and § 1823(e).

## BACKGROUND

■ The RTC presented its motion against plaintiffs' claim as one to dismiss; the district judge converted it into a motion for summary judgment. This Court reviews *de novo* the denial of summary judgment when presented on interlocutory appeal. *East Food & Liquor, Inc. v. United States,* 50 F.3d 1405, 1410 (7th Cir.1995). We review the facts alleged in the complaint and the legitimate inferences to be drawn therefrom in the light most favorable to plaintiffs. *Id.* They are as follows: Beginning in June 1986 and continuing through October of that year, plaintiffs wrote the Notes to acquire limited partnership interests in an entity called Northbrook Columbus Limited Partnership ("NCLP"). In August 1986, NCLP in turn purchased a large stake in an Illinois hotel property (the "Hotel"). The Hotel had been put up for syndicated sale by First Real Estate Development Corporation ("FRED"), a wholly owned subsidiary of Independence. In addition to holding two junior mortgages on the Hotel, Independence allegedly secured an appraisal of the property and—according to plaintiffs, although Independence disputes the claimed authorship—prepared an offering memorandum detailing the Hotel's prospects. This offering memorandum, plaintiffs claim, made fraudulent misrepresentations as to the Hotel's worth by incorporating false assurances that the appraisal was an accurate valuation of the property, that the Hotel would retain its Holiday Inn franchise, that Independence would provide necessary financing for repairs to maintain that franchise, and that Allstate Insurance Company would continue to lease space for corporate meetings at the Hotel. In fact the repairs were not forthcoming, Allstate had already made plans to move its meetings to another location, and the Holiday Inn people also decamped soon after the ink dried on plaintiffs' signatures.

Several months after NCLP's acquisition of a stake in the Hotel, in December 1986 Independence persuaded the partnership to refinance the property by consolidating Independence's third and fourth mortgages. NCLP assigned the Notes, worth approximately $1 million, to Independence in exchange for a smaller lien. Things went downhill from there: the Hotel soon went bankrupt, followed by NCLP and not long after by Independence. The RTC was appointed conservator for Independence in 1989 and became its receiver in 1990.

Plaintiffs brought claims against the RTC, as receiver for Independence, of fraudulent misrepresentation, negligent supervision, and unjust enrichment resulting from the bank's handling of the Hotel sale and subsequent refinancing. The complaint requested $4.5 million in damages and further sought injunctive relief against the RTC's enforcement of the Notes. The RTC counterclaimed for a judgment on the Notes and moved to dismiss plaintiffs' fraud claim, asserting in both cases that the *D'Oench* doctrine and 12 U.S.C. § 1823(e) foreclosed plaintiffs' efforts. As stated above, the district judge held for the RTC on its counterclaim in an unappealed judgment but allowed plaintiffs to proceed with their fraud case, although the judge limited the fraud claim to statements made or omitted from the offering memorandum. See Mem.Op. June 8, 1992, 1992 WL 137650 Mem.Op. Dec. 8, 1992, 1992 WL 370554.

■ The RTC now argues that the district judge misapprehended the *D'Oench* doctrine and § 1823(e) in allowing the offering memorandum to serve as the potential predicate for a fraud claim. That may be; but before even concerning ourselves with the district judge's analysis of *D'Oench* and related cases we must decide whether the offering memorandum can in fact serve as the basis for an allegation of fraud against Independence. If not, then plaintiffs have no case regardless of the strictures of *D'Oench,* and we need not consider the parameters of that doctrine. Although this Court did not gain jurisdiction over the interlocutory appeal by virtue of the factual dispute over the sufficiency of the offering memorandum—the controlling question presented to us was the interpretation of *D'Oench* and § 1823(e)—we are not constrained in our appellate review to the controlling question alone, but may consider oth-

er pertinent issues reflected in the district court's order. *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 246 (7th Cir.1981), certiorari denied, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855; see also *Ducre v. Exec. Officers of Halter Marine, Inc.,* 752 F.2d 976, 983 n. 16 (5th Cir.1985). Certainly the substance, or lack thereof, in plaintiffs' underlying fraud claim is an issue appropriate for our evaluation.

■ The district judge refused to consider RTC's argument that plaintiffs introduced insufficient evidence regarding Independence's purported fraud to survive a motion for summary judgment. This refusal, based on the judge's perception that the RTC had waited too long to raise the argument, was error. Despite the shifting procedural posture of the case from a motion for dismissal to one for summary judgment, it was clear throughout that the RTC was contesting the adequacy of plaintiffs' proof as well as the legal constraints on their claim. See, *e.g.,* RTC's Reply Memorandum in Support of Motion for Summary Judgment at 3–6 (detailing "striking gaps" in plaintiffs' evidentiary submissions). We therefore turn to the RTC's argument that plaintiffs failed to meet their burden on summary judgment.[3]

■ To survive the RTC's motion for summary judgment, plaintiffs would have had to produce sufficient evidence that would reasonably permit the finder of fact to find in their favor on the material question of Independence's fraud. See *Cliff v. Bd. of School Comm'rs of Indianapolis, Ind.,* 42 F.3d 403, 408 (7th Cir.1994) (citation omitted). Fraud involves (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intended to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Soules v. General Motors Corp.,* 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 402 N.E.2d 599 (1980). As stated above, the district court had already held that of plaintiffs' submissions, only the offering memo-

randum could plausibly support a finding of fraud by Independence, assuming that Independence had authored the document and plaintiffs had detrimentally relied on it.

■ However, the record is devoid of evidence (beyond plaintiffs' unsupported assertions in the complaint) that Independence had anything to do with preparing the offering memorandum. All the available evidence tends to suggest the contrary, that a separate party authored the offending document. NCLP's name, not Independence's, is on the offering memorandum; only a partial copy was ever found in Independence's possession; the RTC submitted uncontested affidavits attesting to the fact that Independence had not authored the memorandum. In sum, as the district court noted, "there is no real evidence Independence authored the offering memorandum or had any direct dealings with plaintiffs over its contents." Mem.Op. Dec. 8, 1992, at 8. Nor is it clear why Independence would have been responsible for the creation of a document that essentially served to bring plaintiffs into NCLP as limited partners.

To the extent they are not irrelevant, plaintiffs' other exhibits submitted in opposition to the RTC's motion fail even more resoundingly to support a fraud claim against Independence—none involves a communication from Independence to them, either directly or through third parties. See *Soules,* 79 Ill.2d at 286, 37 Ill.Dec. 597, 402 N.E.2d 599; Plaintiffs' Exhibits in Opposition to RTC's Motion to Dismiss and Motion for Summary Judgment, R.Vol. 1. Their fraud claim thus is dead in the water, regardless of whether or not *D'Oench* and § 1823(e) would operate to bar it. Seeing no way that plaintiffs could prevail in a fraud claim against the RTC, we reverse the district court's order allowing the action to proceed and remand for dismissal of said action.

---

**3.** Plaintiffs were not prejudiced by the district court's conversion of the motion to dismiss into a summary judgment motion; they had already conducted extensive discovery in order to con-

front the RTC's summary judgment motion on its own counterclaim and were unable to produce any evidence more substantive than what we have in the record today.