**HARRIS TRUST AND SAVINGS BANK, not individually but solely as Trustee for the Ameritech Pension Trust; Ameritech Corporation; and John A. Edwardson, Plaintiffs–Appellees,**

v.

**SALOMON BROTHERS INC. and Salomon Brothers Realty Corp., Defendants–Appellants.**

No. 98–1812.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1998.

Decided July 6, 1999.

Charles C. Jackson (argued), Alexander S. Vesselinovitch, Sari M. Alamuddin, Seyfarth, Shaw, Fairweather & Geraldson, Warren A. VonSchleicher, Bell, Boyd & Lloyd, Chicago, IL, Stanley A. Walton, Willowbrook, IL, Susan Lichtenstein, Associate General Counsel, Ameritech Corp., Chicago, IL, for Plaintiffs–Appellees.

Peter C. Hein (argued), Wachtell, Lipton, Rosen & Katz, New York, NY, William F. Conlon, Richard B. Kapnick, Linda T. Ieleja, Sidley & Austin, Chicago, IL, for Defendants–Appellants.

Before FLAUM, KANNE, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

The Employee Retirement Income Security Act (ERISA) prohibits certain transactions between an employee pension plan and its service providers who are deemed "parties in interest" under the Act. In this case we decide whether ERISA provides a private cause of action against a party in interest for engaging in such prohibited transactions.

In the late 1980's defendant Salomon Brothers Inc. set up financing for two motel chains, Motels of America, Inc. and Best Inns, Inc., to acquire large blocks of motel properties throughout the country. In four separate transactions the companies initially sold mortgage notes secured by the acquired properties to Salomon, who in turn sold the notes to institutional investors. In exchange for its services Salomon received a participation interest in each group of motel properties which entitled it to a percentage of the "net cash flow" generated by the properties plus a percentage of any appreciation in the properties' value.

During this same time period Salomon also provided broker-dealer services to plaintiff Ameritech Pension Trust (APT), which holds assets for Ameritech Corporation's employee pension plans. Ameritech had appointed National Investment Services of America, Inc. (NISA) to serve as investment manager to APT. In 1987 Salomon offered to sell its participation interests in the Motels of America and Best Inns motel properties to APT as an investment. After extensive negotiations among Salomon, NISA, and Ameritech, APT pur-

chased Salomon's participation interests in the four groups of motel properties for over $20 million. In the early 1990's the nationwide market for hotel and motel real property collapsed, and APT suffered a considerable loss on its investment.

In 1992 APT's newly appointed trustee, Harris Trust and Savings Bank, sued Salomon (and a related company, but we can disregard that detail), seeking to hold it liable for APT's loss on the motel property participation interests. Among the 12 claims in the initial complaint were three ERISA claims relevant here: (1) a claim that Salomon was a fiduciary that had breached its duties to the plan under Title 29 U.S.C. § 1104; (2) a claim that Salomon was a fiduciary that caused the plan to engage in prohibited transactions under § 1106(a); and (3) an alternative claim that Salomon as a nonfiduciary had knowingly participated in a breach of a § 1104 duty by plan fiduciaries.

After the plaintiffs filed suit, we held in another case, based on Supreme Court dicta, that ERISA does not provide a private cause of action against a nonfiduciary for participation in a fiduciary's breach of duty. *See Reich v. Continental Cas. Co.*, 33 F.3d 754, 757 (1994); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). This holding effectively knocked out the plaintiffs' third claim. Evidently, the plaintiffs were also fearful that the district court would find that Salomon was not a plan fiduciary, so they amended their second claim to cite Salomon for participating as a nonfiduciary party in interest in a transaction prohibited by § 1106.

Salomon moved for summary judgment on all three ERISA claims, and the plaintiffs moved for summary judgment on their § 1106 claim. As the plaintiffs had feared, Magistrate Judge Joan Humphrey Lefkow, sitting by consent of the parties, first determined that Salomon was not a plan fiduciary and found for Salomon on the first claim. As expected, she also found that the holding in *Continental Ca-*

*sualty* eliminated the third claim against Salomon for nonfiduciary participation in a fiduciary breach. Judge Lefkow denied summary judgment on the newly constituted § 1106 claim, however, finding that ERISA does provide a private cause of action against nonfiduciaries who participate in a prohibited transaction.

After the Supreme Court's decision in *Lockheed Corp. v. Spink*, 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996), Salomon moved for reconsideration or, in the alternative, certification for interlocutory appeal on the sole remaining claim. In *Lockheed* the Supreme Court held that a § 1106 violation occurred only when a fiduciary had caused the plan to enter into the prohibited transaction. The district court declined to reconsider but granted certification for appeal of its denial of summary judgment. We review the denial of a motion for summary judgment *de novo. See Hillman v. Resolution Trust Corp.*, 66 F.3d 141, 143 (7th Cir.1995).

In a part of ERISA titled "Fiduciary Responsibility" the nature of a fiduciary's relationship to a qualified employee benefit plan is spelled out in detail. Title 29 U.S.C. § 1104 defines the duty owed:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]

29 U.S.C. § 1104(a)(1). Section 1109 then makes a fiduciary personally liable for breaching this duty and describes the remedies available for a breach. Another part of the Act titled "Administration and Enforcement" provides a specific civil enforcement provision against fiduciaries who breach their duties—the Secretary of Labor, plan beneficiaries, and plan fiduciaries can sue fiduciaries for "appropriate

relief under [§ 1109]." 29 U.S.C. § 1132(a)(2). ERISA also broadly allows the Secretary of Labor, plan fiduciaries, and plan beneficiaries to sue "to enjoin any act or practice which violates any provision of this title or the terms of the plan, or ... to obtain other appropriate equitable relief ... to redress such violations or ... to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). This last provision and the phrase "other appropriate equitable relief" has been the cause of much consternation in the courts.

In *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Supreme Court considered a claim by plan beneficiaries against a nonfiduciary for knowingly participating in a fiduciary's breach of duty. The nonfiduciary defendant had acted as actuary for the Kaiser Steel Retirement Plan. When Kaiser began phasing out its steel operations a large number of employees took early retirement, and the defendant failed to change the plan's actuarial assumptions to reflect the costs of the unusually large influx of retirees. As a result, Kaiser failed to adequately fund the plan. The plaintiffs brought their action under the "other appropriate equitable relief" clause of § 1132(a)(3). The *Mertens* parties and the lower courts all assumed that § 1132(a)(3) provided a cause of action against nonfiduciaries for knowingly participating in a fiduciary breach, and the only question raised before the Supreme Court was whether money damages could constitute "other appropriate equitable relief." *See Mertens*, 508 U.S. at 251, 113 S.Ct. 2063. After extensive ruminations on the nature of equity, a 5–4 majority held that money damages could not be considered equitable relief for the purposes of § 1132(a)(3).

More importantly for our purposes, Justice Scalia, writing for the majority, made clear the Court's doubts that § 1132(a)(3) provides a cause of action against nonfiduciaries for participating in a fiduciary breach because "no provision explicitly requires them to avoid participation (knowing or unknowing) in a fiduciary's breach of fiduciary duty." *Id.* at 254, 113 S.Ct. 2063. There had been such a cause of action under the common law of trusts upon which ERISA was largely based. *See id.* Justice Scalia reasoned, however, that because Congress undoubtedly knew about the common law cause of action, it is all the more unlikely that the omission of an explicit cause of action in ERISA was inadvertent. *See id.* The "statute's ... detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *See id.* (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–47, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). We adopted Justice Scalia's rationale as the law of this circuit in *Continental Casualty*, 33 F.3d at 757.

■ On appeal, the plaintiffs have wisely abandoned their claim against Salomon for participating in a breach of fiduciary duty under § 1104. Instead, they cite § 1106, which addresses "Transactions between plan and party in interest." In pertinent part, § 1106 provides:

(a)(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

. . . .

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan[.]

29 U.S.C. § 1106(a). Section 1106 prohibits plan fiduciaries from engaging in these transactions because they create a high potential for conflicts of interest. One example of a party in interest is "a person providing services to such plan." 29 U.S.C. § 1002(14)(B). For the purposes of

our review we assume that at all relevant times Salomon was a party in interest vis á vis APT and that § 1106 therefore prohibited the sale of Salomon's motel property participation interests to APT (two points which Salomon reserves the right to dispute should this case go to trial). The plaintiffs argue that Salomon violated the Act by engaging in a transaction prohibited by § 1106. Therefore, the plaintiffs may seek "appropriate equitable relief," including monetary restitution, against Salomon under § 1132(a)(3).

Judge Lefkow agreed and held that § 1106 imposes a duty on nonfiduciary parties in interest to avoid prohibited transactions. This approach has found support in other circuits. *See Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413 (11th Cir.1998); *Reich v. Stangl*, 73 F.3d 1027, 1032 (10th Cir.1996); *Landwehr v. DuPree*, 72 F.3d 726, 734 (9th Cir.1995); *Reich v. Compton*, 57 F.3d 270, 285 (3d Cir.1995); *Reich v. Rowe*, 20 F.3d 25, 31 n. 7 (1st Cir.1994).

Our analysis begins, as it must, with the statutory language. The plaintiffs and the district court focused on the broad language of § 1132(a)(3) which allows plan fiduciaries like the plaintiffs to seek "other appropriate equitable relief" for any act which violates ERISA. The "act" alleged here is Salomon's participation in a transaction prohibited by § 1106. Therefore, if Salomon is indeed a party in interest and if it did participate in such a transaction, the plaintiffs can seek restitution for the plan's investment losses.

Salomon focuses instead on the language of § 1106 and its statutory context. Salomon points out that § 1106 by its terms only directly governs the conduct of fiduciaries ("a fiduciary ... shall not cause ..."), and therefore only a fiduciary can violate § 1106. Salomon's argument is strengthened when we consider the context of § 1106. Title 29 U.S.C. §§ 1101–1114 deal with "Fiduciary Responsibilities." Section 1104 describes the broad fiduciary standard of care that was re-

quired at common law, and § 1106 imposes a new statutory fiduciary duty—the duty not to cause the plan to enter into certain prohibited transactions. Section 1109 makes the fiduciary and only the fiduciary liable for breaches of the duties described in the "Fiduciary Responsibility" part of the Act. Finally, Section 1132(a)(2) provides a private right of action for appropriate relief under § 1109.

In *Mertens* Justice Scalia reasoned that because ERISA did not explicitly provide a cause of action against nonfiduciaries for participating in a fiduciary breach under § 1104 there was no such cause of action. The same logic applies to § 1106 because it simply describes another variety of fiduciary breach. Nothing explicitly makes nonfiduciaries liable for participating in a breach of that duty. The plaintiffs place great weight on the fact that § 1106 mentions "parties in interest," but the fact of the matter is that the section, by its plain terms, does not regulate their conduct. Therefore, § 1106 imposes no explicit duty on parties in interest. In *Continental Casualty* we adopted Justice Scalia's position that where ERISA does not expressly impose a duty, there can be no cause of action. There seems to be no material distinction between that case and this.

In *Continental Casualty* the fiduciaries of a union pension fund obtained a one-year extension of their fiduciary liability insurance policy. The extension cost $750,000 and provided additional coverage of only $1 million. Entering into such a bad deal was a clear breach of fiduciary duty under § 1104. The Department of Labor sought relief for the plan against the fiduciaries under § 1109 and § 1132(a)(2). It also sought restitution from the insurance company which had participated in the fiduciaries' breach. The Labor Department argued that this was appropriate equitable relief under § 1132(a)(3). Relying on *Mertens*, we denied the claim against the insurance company because neither § 1104 nor § 1109 explicitly imposed liability on nonfiduciar-

ies. Section 1132(a)(3) as a remedial statute only serves to provide a private cause of action for violations of ERISA; it does not expand the scope of liability under the Act.

The same logic applies to this case. Section 1106 falls under the "Fiduciary Responsibility" part of the Act, and § 1109 makes fiduciaries liable for violating § 1106. The mere fact that § 1106 mentions "parties in interest" when it describes the transactions that fiduciaries must avoid does not mean that parties in interest are liable when a fiduciary does engage in a prohibited transaction.

The only viable distinction the plaintiffs raise between the position of participating parties in interest under § 1104 and participating parties in interest under § 1106 is that one of the Act's remedial provisions imposes civil penalties on parties in interest when they participate in a transaction prohibited by § 1106: "In the case of a transaction prohibited by section 406 [29 U.S.C. § 1106] by a party in interest with respect to a plan to which this part applies, the Secretary [of Labor] may assess a civil penalty against such party in interest." 29 U.S.C. § 1132(i). The fact that Congress saw fit to allow the Labor Department to impose such a penalty, however, only makes the absence of a specific provision imposing civil liability on parties in interest all the more striking. Section 1132(i) allows the Labor Department to impose a civil penalty of up to 5 percent of the value of the transaction if the party in interest is willing to "correct" the transaction in a manner prescribed by the Department. If the party in interest refuses to correct the transaction, the penalty can be increased to 100 percent of the transaction amount. The Supreme Court in *Mertens* determined that Congress did not intend to impose civil liability on parties in interest for participating in a breach of fiduciary duty because ERISA does not contain an explicit statement of nonfiduciary participation liability. Similarly, nothing in ERISA makes nonfiduciary parties in interest civilly liable to the plan for participating in a § 1106 transaction. Section 1132(i) does provide a penalty against such parties in interest, but that penalty is imposed solely at the discretion of the Labor Department. If Congress had wanted to place remedial power against nonfiduciaries in the hands of private parties it would have done so more explicitly as it did in the case of fiduciaries and in the case of cofiduciaries. *See* 29 U.S.C. § 1105.

The plaintiffs cite language in *Mertens* which they believe supports their position that parties in interest are liable for participation in prohibited transactions. In *Mertens* Justice Scalia suggested that "[p]rofessional service providers ... must disgorge assets and profits obtained through participation as parties-in-interest in transactions prohibited by [§ 1106], and pay related civil penalties [under § 1132(i) ] ... and (assuming nonfiduciaries can be sued under [§ 1132(a)(3) ] ) may be enjoined from participating in a fiduciary's breaches, compelled to make restitution, and subjected to other equitable decrees." *Mertens*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161. This language, however, does not get the plaintiffs as far as they would like. First, the statement that professional service providers like Salomon must disgorge assets and profits gained from a § 1106 transaction is unremarkable. As discussed above, § 1132(i) forces parties in interest to correct such transactions at peril of a Labor Department penalty.

Second, Justice Scalia's remark that "assuming nonfiduciaries can be sued under [§ 1132(a)(3) ]" must be understood in the context of the unique posture of the case the Supreme Court had before it. The parties and lower courts in *Mertens* had all assumed that § 1132(a)(3) provided relief against nonfiduciaries for participation in a fiduciary breach. Therefore, the Supreme Court was asked to determine only whether damages could be considered "appropriate equitable relief." A majority of the Court, however, expresses strong doubts

as to whether there even was a cause of action under § 1132(a)(3) against nonfiduciaries. *See Mertens*, 508 U.S. at 254–55, 113 S.Ct. 2063. The Court then proceeded to decide the issue of whether damages could be equitable, technically leaving open the issue of whether § 1132(a)(3) provided a cause of action against nonfiduciaries. Thus, the parenthetical phrase "assuming nonfiduciaries can be sued under [§ 1132(a)(3) ]" was stating a big assumption—an assumption Justice Scalia had previously made clear that he and a majority of the Court were unwilling to make. Justice Scalia's reasoning is now the law of this circuit, and the "assuming" language can no longer support the plaintiffs' reading of the statute.

Both parties also cite the more recent Supreme Court decision in *Lockheed Corp. v. Spink*, 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996), to support their respective positions. Salomon cites the case for the proposition that only fiduciaries can be held liable under § 1106. In *Lockheed* the plaintiff beneficiary sued his employer, the plan sponsor, for engaging in a transaction prohibited by § 1106. The Ninth Circuit held that the plan sponsor in this case was not a fiduciary but was still liable as a party in interest under § 1106. The Supreme Court reversed. Justice Thomas, writing for a unanimous Court, held that proof that a fiduciary caused the plan to enter into the prohibited transaction was a necessary predicate to § 1106 liability. *See id.* at 891, 116 S.Ct. 1783. Once the Court had determined that the defendant sponsor was not a fiduciary, there was no other potential fiduciary to cause the transaction. However, Justice Thomas also seemed to leave open the possibility that a nonfiduciary party in interest could be held liable for a prohibited transaction if a fiduciary caused the plan to enter into the transaction:

> The Court of Appeals thus was not necessarily wrong in saying that "a party in interest who benefitted from an impermissible transaction can be held liable

under ERISA"; but the only transactions rendered impermissible by [§ 1106] are transactions caused by fiduciaries.

*See id.* at 889 n. 3, 116 S.Ct. 1783. The plaintiffs seize on this rationale to support their argument that nonfiduciaries are liable under § 1106, but the opinion really provides no guidance one way or the other. "Not necessarily wrong" does not mean "right." Furthermore, Justice Thomas went out of his way to point out that the passages from *Mertens* that the Ninth Circuit relied on in finding that "a party in interest who benefitted from an impermissible transaction can be held liable under ERISA" were dicta. *See id.* At most, the "not necessarily wrong" statement makes it clear that in *Lockheed* the Court was once again not addressing the issue of party-in-interest liability under § 1106. Such liability was still an open question after *Lockheed* as far as the Supreme Court was concerned.

The plaintiffs also find support for their reading of § 1106 in ERISA's legislative history. A Congressional Conference Committee Report suggests that § 1106 would prohibit "plan fiduciaries and parties in interest" from engaging in the listed transactions, implying that both parties to the transaction would be liable. H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 5087. But Salomon's analysis of the legislative history is more convincing. The Senate and the House of Representatives both passed versions of ERISA. The House bill did not explicitly impose liability on nonfiduciaries; the Senate bill did:

> Any party in interest who participates in a transaction prohibited by this Act knowingly, or with reason to know that the transaction was a transaction to which this Act applies shall be personally liable to make good to the fund any losses sustained by the fund resulting from such transaction, and to pay the fund any profits realized by him from such transaction.

H.R. 2, 93rd Cong., 2d Sess. §§ 511 (adding § 15(i)), 693 (as passed by the Senate on Mar. 4, 1974) (not enacted), *reprinted in* Legislative History of the Employee Retirement Income Security Act of 1974, Vol. 3, at 3599, 3780 (1976). The Conference Committee staff charged with reconciling the House and Senate versions specifically recommended dropping the party in interest liability provision. Summary of Differences Between the Senate Version and the House Version of H.R. 2—To Provide for Pension Reform, committee prints prepared for the use of the Senate and House conferees on H.R. 2, Committee Print No. 1, Pt. 3, p. 9, 93rd Cong. Sess. (1974), *id.* at 5259. And Congress did so when it passed the final bill into law. While we hesitate to give too much weight to legislative history, this record suggests that Congress specifically considered imposing civil liability on parties in interest for participating in impermissible transactions, then elected not to do so.

Whether there is a private cause of action against nonfiduciary parties in interest under § 1106 is a difficult issue. As we have noted, at least three other circuits have found such a cause of action. Ultimately, the dicta in *Mertens* adopted by this court in *Continental Casualty* provides the most guidance. Applying Justice Scalia's rationale to § 1106, we do not think it imposes liability on nonfiduciary parties in interest any more than § 1104 does. Like § 1104, § 1106 comes under the heading "Fiduciary Responsibility."

■ The plaintiffs argue that because it is entitled "Prohibited Transactions" § 1106 regulates the conduct of all parties to the transaction. The prohibitory language of the section itself is clear, however: "*fiduciaries* shall not ...." Causing a qualified plan to engage in one of these transactions is simply another species of fiduciary breach. A nonfiduciary cannot violate § 1106 and therefore cannot be liable under § 1132(a)(3) for participating in a § 1106 transaction. Section 1132(i) provides the only express penalty against nonfiduciary parties in interest who participate in a fiduciary's breach of his or her responsibility under § 1106. The Supreme Court has repeatedly stated its reluctance to infer ERISA causes of action where the statute does not expressly provide for them, and we decline to do so here.

With all due respect to the circuits[1] who have considered this issue, we find no convincing reason to distinguish § 1106 from § 1104 for the purposes of nonfiduciary liability. The decision of the district court is therefore reversed and summary judgment is granted to Salomon Brothers.

---

1. Because this opinion creates a circuit split, it has been circulated among all judges of the court in regular active service as required by Seventh Circuit Rule 40(e). Judge Coffey did not participate in the circulation due to a conflict. All other judges voted not to rehear the case en banc except Judge Ripple who voted to grant rehearing en banc.